THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLIFFORD A. DYER, a/k/a TONY DYER, Defendant-Appellant.

(Nos. 73-242, 74-194 cons.;

Fifth District—May 15, 1975.

Clifford A. Dyer, *pro se* in No. 73-242.

Paul Bradley and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant in No. 74-194.

Kelly D. Long, State's Attorney, of Hillsboro, for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The defendant, Clifford A. Dyer, a/k/a Tony Dyer, was indicted on 11 counts, 8 counts of murder, 1 count of manslaughter, and 2 counts of concealment of a homicidal death. The State elected to prosecute the defendant on one count of murder and one count of concealment of a homicidal death. At the conclusion of defendant's trial the jury returned verdicts of not guilty of murder and guilty of concealment of a homicidal death. The circuit court of Montgomery County entered judgment thereon and sentenced the defendant to not less than 32 months' nor more than 8 years' imprisonment. The defendant perfected both an appeal and a petition for post-conviction relief from the entry of this judgment. After an "evidentiary" hearing the defendant's post-conviction petition was dismissed by the circuit court of Montgomery County. The defendant also appeals from the dismissal of his post-conviction petition. For purposes of review we have consolidated the defendant's direct appeal and the defendant's appeal from the dismissal of his post-conviction petition.

The first contention the defendant raises on his direct appeal is that

the jury's verdict of guilty of concealment is inconsistent with the jury's verdict of not guilty of murder. He argues that the evidence on both offenses was so "intertwined" that the jury could not, without compromising, return such inconsistent verdicts.

■■   Our review of the record, however, reveals sufficient evidence from which the jury could have concluded, beyond a reasonable doubt, that the defendant did conceal the death of another person with knowledge that such person died by homicidal means. The greater part of this evidence is found contained in the testimony of the State's principal witness, Sandra Giller.

Sandra Giller testified in the following manner. On the evening of November 15, 1972, she went to the Log Cabin Inn with the defendant, Frank Arnold, and Jessie Campos, a/k/a Jessie Toledo, the deceased. While sitting at a table with the defendant and Campos, Campos pulled out a gun and shot it at the floor. When the witness and her three companions left the inn they entered Arnold's car. At this point Campos pulled a gun on the defendant. The two men fought, the defendant got the gun and told Campos he was going to teach him a lesson. The defendant then directed Arnold to drive towards the country. After driving into the country under the directions of the defendant, Arnold stopped the car near a shed. The defendant told Arnold and Campos to get out of the car. The defendant then pushed Campos towards the shed. The defendant, Arnold, and Campos entered the shed. At this juncture the defendant was in possession of the gun. After a couple of minutes, the witness heard a gunshot and someone scream. Then Arnold came running out and got in the car. He told the witness that the defendant had shot and killed Campos. The defendant exited from the shed a few minutes later, and the three of them drove into the town of Litchfield. Arnold was dropped off at his home and told by the defendant to report his car stolen. The defendant and the witness then proceeded to the defendant's home. There they picked up the defendant's car. The witness drove Arnold's car and the defendant drove his own car to a place called Walton Park. While there the defendant wiped fingerprints off Arnold's car and threw a small gun into a pond. They then left in the defendant's car; leaving Arnold's car at Walton Park. Later that evening the defendant told the witness that he had killed Campos.

The defendant contends that he thoroughly impeached Sandra Giller on cross-examination and argues that since the jury failed to return a verdict of guilty on the murder count that it must be concluded that the jury found Giller's testimony to lack credibility. We do not agree. It was the province of the jury to determine whether to accept, and to

what extent to accept, Giller's testimony, As the court stated in *People v. Pagan,* 52 Ill.2d 525, 534, 288 N.E.2d 102, the judgment of the trier of fact will not be set aside on review unless the proof of guilt is so unsatisfactory as to create a reasonable doubt as to the defendant's guilt. The jury could reasonably have found that the two statements which directly incriminated the defendant on the murder count were insufficient to establish that the defendant murdered Campos and, yet, have found that the remainder of such testimony, portions of which were corroborated, was sufficient to establish that the defendant knew that Campos died as a result of a homicide and that the defendant took deliberate measures in an attempt to conceal such death. We do not find this proof so unsatisfactory as to require reversal, and we are satisfied that there was sufficient evidence to prove that the defendant's actions manifested an intentional effort to conceal Campos' homicidal death.

■■ Nor do we find the jury verdicts to be legally inconsistent. The crime of concealment of a homicidal death is statutorily defined as follows:

> "A person commits the offense of concealment of a homicidal death when he conceals the death of any other person with knowledge that such other person has died by homicidal means." (Ill. Rev. Stat., ch. 38, par. 9—3.1(a).)

Consequently, the trier of fact might be able to determine that a defendant concealed the death of an individual with knowledge that such individual died by homicidal means and, nevertheless, be able to determine that such defendant murdered that individual. An acquittal of murder does not ipso facto, require acquittal of the charge of concealment of a homicidal death. The statute expressly provides that each crime is a separate offense. (Ill. Rev. Stat., ch. 38, par. 9—3.1(b).) Our supreme court commented on the requirements of legal consistency of verdicts in *People v. Hairston,* 46 Ill.2d 348, 263 N.E.2d 840. Therein the court stated:

> "But where, as here, the verdicts inconsistently acquit and convict of separate crimes arising from the same act, our courts have followed the view that logical consistency in verdicts in such instances is not necessary, so long as the verdicts are not legally inconsistent. [Citations.] To use the words of the court in *State v. Baird,* [200 Wash. 227], 93 P.2d 409, 412, we follow the view that: 'In law there is no inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts.'" (46 Ill.2d 348, 361-62.)

(See also *People v. Lyons,* 26 Ill.App.3d 193, 324 N.E.2d 677.) Since

the crimes of murder and concealment of a homicidal death are composed of different elements there is no legal inconsistency in the verdicts rendered in the instant case.

The sole remaining contention the defendant raises on direct appeal is that it was prejudicial error to bring up the past criminal record of the defendant and to offer evidence of other crimes to the jury.

The record discloses that the two instances in which the State's witnesses made reference to the defendant's past criminal record were not prejudicial and, consequently, do not require reversal. Neither reference detailed the defendant's past criminal conduct; nor was either of an inflammatory nature. In both instances, the defense counsel immediately objected, the statements were ordered stricken from the record, and the jury was instructed to disregard the remarks. Under these circumstances, we find such improper remarks if not cured (*People v. Hamilton*, 27 Ill.App.3d 249, 327 N.E.2d 35), constituted harmless error not requiring reversal. See *People v. Wilson*, 51 Ill.2d 302, 281 N.E.2d 626; *People v. Cherry*, 130 Ill.App.2d 965, 267 N.E.2d 744.

The defendant's allegation concerning the improper admission of evidence of "other crimes" concerns testimony developed on the cross-examination and redirect examination of Sandra Giller. The defendant contends that this testimony produced evidence that the defendant committed three other crimes, deceptive practices, pandering, and aggravated battery. He argues that he was prejudiced as a result of these disclosures.

The defense counsel, in an attempt to impeach Sandra Giller, elicited on cross-examination that she had engaged in prostitution, had written bad checks, and had jumped out of a car occupied by the defendant. To rebut these impeaching revelations the State's attorney attempted to establish that Giller's irregular conduct was not voluntary and was the result of intimidation. It was, of course, quite proper for the State to employ such a strategy in an attempt to rehabilitate its witness. The difficulty with the State's strategy in the instant case arises from the fact that the defendant was allegedly the source responsible for the intimidation.

■■ The defense counsel objected to the State's inquiry concerning deceptive practices and prostitution before the witness had an opportunity to identify the party who was allegedly responsible for such criminal activity. The remaining instance involved the witness' explanation of why she jumped out of an automobile. On cross-examination the defense counsel elicited the following testimony from Sandra Giller:

"Q. Mrs. Giller, on June 6, 1972, you jumped out of a car didn't you?

A. I was told to jump or they would go ahead and push me.

Q. You jumped didn't you?

A. Yes.

\* \* \*

Q. Nobody pushed you out of that automobile did they, Mrs. Giller:

A. No."

On redirect examination the following colloquy occurred:

"Q. Mrs. Giller, why did you jump out of an automobile in June of 1972?

MR. PERIARD: Same objection Your Honor, unless—

THE COURT: If she has an explanation I think I'll let her give it.

A. I don't remember how it got started or anything but when I got ready to jump Tony opened the door and—anyway, he said either jump or he was going to push me so I jumped."

The trial court permitted the answer to stand, thus overruling the defense counsel's request to strike the answer and to instruct the jury to disregard it. While the practice of eliciting testimony concerning the defendant's involvement in other potentially criminal activity is not to be encouraged and subject to close scrutiny by the courts, from our review of the record, we cannot say that the circumstances surrounding this episode were elicited in an attempt to either arouse the jury or to prejudice it against the defendant. Instead, it appeared to be a bona fide attempt by the State to rehabilitate its witness.

Having thus found without merit each of the contentions the defendant raised on his direct appeal, we affirm the judgment of conviction entered by the circuit court of Montgomery County.

In review of this conclusion we find it necessary to address the defendant's appeal from the dismissal of his petition for post-conviction relief. The defendant's post-conviction petition alleged that he was denied due process of law since the assistant State's attorney assisted in the prosecution of the instant case after having previously represented the defendant in unrelated criminal proceedings and after having been consulted by the defendant regarding his defense against the instant charges.

After a truncated "evidentiary" hearing, the trial court allowed the State's motion to dismiss the defendant's post-conviction petition. This appeal presents two issues for review: (1) whether the defendant waived the issues raised in his post-conviction petition; and (2) whether the trial court erred in dismissing the defendant's post-conviction petition.

■■ While as a general rule claims which were or could have been

raised on direct appeal may not later be raised in a petition for post-conviction relief (*People v. Brown*, 52 Ill.2d 227, 287 N.E.2d 663; *People v. Kamsler*, 40 Ill.2d 532, 240 N.E.2d 590), a reviewing court will relax the application of the general rule where fundamental fairness so requires (*People v. Nichols*, 51 Ill.2d 244, 281 N.E.2d 873; *People v. Hamby*, 32 Ill.2d 291, 205 N.E.2d 456; *People v. Martinez*, 14 Ill.App.3d 775, 303 N.E.2d 442). We believe it would be fundamentally unfair and a violation of the defendant's constitutional rights to due process if his attorney later prosecuted him for a crime the facts of which the defendant had previously discussed with such attorney. (See *Young v. State* (Fla. App. 1965), 177 S.2d 345; *State v. Burns* (Mo. 1959), 322 S.W.2d 736; *State v. Leigh* (1955), 178 Kan. 549, 289 P.2d 774.) Accordingly, we do not find that the defendant waived the issues raised in his post-conviction petition.

Finally, did the trial court err in dismissing the defendant's post-conviction petition? The trial court permitted the defendant to present some evidence at the hearing on his post-conviction petition before it dismissed such petition. The trial court did not dismiss the petition on waiver grounds, but rather on the merits of the petition. We find this dismissal highly irregular. The granting of a motion to dismiss is improper where there remains a material factual dispute whether the defendant's constitutional rights have been violated. (See *People v. Caldwell*, 55 Ill.2d 152, 304 N.E.2d 292; *People v. Wegner*, 40 Ill.2d 28, 237 N.E.2d 406.) Furthermore, the defendant, in the instant post-conviction proceedings, had already proffered sufficient evidence to establish a prima facie case of a violation of his constitutional rights. The record and the briefs make it quite evident that the trial court's dismissal of the defendant's post-conviction petition was granted prematurely.

The principal reason the trial court offered to explain its dismissal was that the defendant's alleged conversations with Mr. Vandever, who had previously represented the defendant on unrelated charges and who assisted in the prosecution of the instant charges, occurred before an indictment was returned on the instant charges. According to the trial court, absent "E.S.P." the defendant could not have conversed with Vandever about charges which had not yet been filed. Technically speaking the trial court is correct; the defendant could not, at the time of the alleged conversations with Vandever, have conversed about the instant charges. Nevertheless, the defendant could have conversed about facts surrounding his involvement with the instant offenses since such events occurred prior to the alleged conversations with Vandever. If true the alleged conversation may present an even more serious constitutional issue: Was the indictment the product of such conversations?

At present the defendant's testimony stands uncontradicted. Such testimony established that Mr. Vandever previously represented the defendant on unrelated charges, that such charges were pending at the time the defendant allegedly conversed with Mr. Vandever about facts surrounding the instant charges and that subsequently Vandever assisted in the prosecution of the instant charges.

In view of these facts we hold that the trial court erred in dismissing the defendant's post-conviction petition and we, therefore, remand this cause for a *full* evidentiary hearing.

Conviction affirmed, order of dismissal of post-conviction petition reversed, cause remanded with directions.

KARNS and CARTER, JJ., concur.