THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS J. VATH, Defendant-Appellant.

Fifth District   No. 74-446

Opinion filed April 28, 1976.

EBERSPACHER, J., specially concurring.

Stephen P. Hurley and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kelly D. Long, State's Attorney, of Hillsboro (Bruce D. Irish and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant, Thomas J. Vath, was charged in separate indictments in Montgomery County with the murder of William L. Loveless and the concealment of his death by homicide. After a jury trial, defendant was convicted of concealment of a homicidal death and was sentenced to serve from 2 to 10 years' imprisonment. On appeal, defendant contends that the State was barred by collateral estoppel from prosecuting defendant for concealment after defendant was acquitted of murder; that it was fundamentally unfair to allow prosecution of separate but related offenses in separate trials; that the State failed to allege and prove an offense under the concealment statute; that the State failed to prove defendant guilty beyond a reasonable doubt in that the wholly circumstantial nature of the evidence failed to preclude every reasonable hypothesis of defendant's innocence; and that the court erred in excluding defense evidence tending to disprove defendant's presence at the scene of the crime.

The evidence introduced at the second trial was substantially the same as that introduced at the first. The body was found at about 6 a.m. the morning of January 14, 1974, on a country road outside of Litchfield, Illinois. Medical testimony established that the cause of death was numerous blows to the head with a heavy dull-edged object. Because the body had been embalmed prior to the autopsy the time of death could not be established. The examining physician testified that death could have been instantaneous or the deceased could have lingered for as long as 24 hours. The doctor testified that a large amount of blood around the wounds would indicate a lingering death. Other testimony established that a large quantity of blood was present around the head of the deceased when the body was found and that the body contained little blood.

Two occupants of a car that had slid off a road near the area on the night of January 13 testified that they were picked up by defendant about 12:15 a.m. on January 14. The deceased was in the car. Both witnesses positively identified the defendant and the deceased and stated that

defendant had identified himself as "Tom Vath." Defendant took them to a friend's house nearby.

Tests were made upon defendant's car and several items taken from it and from his house. Several spots of blood were found matching that of the deceased. In addition, the heel of a shoe owned by defendant was similar to a mark found near the body but no positive identification was made.

Defendant's evidence tended to establish that he had been with another person, not the deceased, early in the evening of January 13 and had returned home by 10:30 p.m. and had remained there until about 5 or 6 a.m. on January 14 when he left for work. In addition, defendant attempted to establish that certain of the blood spots found could have been made by members of his family who had the same blood type as the deceased. Defendant produced evidence that the shoes introduced at trial were not the ones he wore on January 13 and 14.

Defendant has complained of several minute contradictions in the testimony of witnesses in the first and second trials which, because of our decision, we need not consider. The only significant addition to the State's case in the second trial came from a police officer who interrogated the defendant after his arrest. He testified that defendant stated that he had been with a girlfriend on the evening of January 13 and had returned home and gone to bed about 10:30 p.m. In the statement, defendant also denied having seen the deceased since 1972 except that he admitted having seen him in Litchfield, Illinois, 2 days prior to the offense but had not spoken to him.

During the State's case, defendant objected to testimony of events occurring before the murder. The court limited all testimony to events occurring on January 14 and thereafter. This permitted the two witnesses to testify about seeing defendant near the scene at about 12:15 a.m. but precluded defendant's alibi evidence that he was at home in bed at 10:30 p.m. on January 13.

In the view we take of this case we need to comment on but one issue, whether the State alleged and proved an offense under the Statutes of Illinois. The indictment charged that defendant "did knowingly and intentionally conceal his knowledge of the death of William L. Loveless knowing that William L. Loveless died by homicidal means. * * *" The evidence introduced by the State, and assumed to be true for purposes of this opinion, indicates that defendant was present at the scene of the crime and had knowledge that the victim died by homicidal means. Between the time that defendant was present at the scene and the time of the discovery of the body the fact of a homicidal death was not known to the authorities. During that interval defendant did not reveal his knowledge of the homicidal death and later, when interrogated, denied

knowledge of the death. Without more, however, we do not believe that the State proved an offense.

It should be observed that the indictment is not in the language of the statute, and we believe that the distinction between concealing ones knowledge of a homicidal death, as charged here, and concealing the death of another who dies by homicidal means is of critical importance. We believe that "concealment" as used in the statute imports more than a failure to share knowledge, presumably with the police or prosecution authorities, but requires proof of acts or conduct calculated to "conceal" a homicidal death.

While the instructions given were in the language of the statute, they were not helpful in illuminating the elements of the offense. Needless to say, the defendant could not be retried for murder; so, our attention must be focused on an act of concealment.

Section 9—3.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—3.1) states, "A person commits the offense of concealment of homicidal death when he conceals the death of any other person with knowledge that such other person has died by homicidal means." In language operatively the same, section 9—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—4) makes it an offense to "conceal the death" of a bastard. Two other concealment statutes, sections 30—2 (misprision of treason) and 31—5 (concealing or aiding a fugitive) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 30—2, 31—5) specifically make concealment of *knowledge* part of the offense; although, the precise elements of these offenses are not abundantly clear. No case has arisen in Illinois which has considered this problem under any of the four statutes. This court has recently decided *People v. Dyer*, 28 Ill. App. 3d 436, 328 N.E. 2d 716 (1975), where the defendant was tried jointly for murder and concealment of a homicidal death. He was acquitted of murder but convicted of concealment. The principle point raised on appeal was that the verdicts were legally inconsistent. We reject this contention. The point here raised was not presented for the court's determination; although, we noted that the record contained sufficient evidence of concealment to support the jury's verdict.

In *State v. Watson*, 145 Kan. 792, 67 P.2d 515 (1937), the defendant, a justice of the peace, was accused of embezzlement in not turning over money in a criminal case to the county. The court held that mere failure to file a certificate of conviction or to pay money over to the county clerk would now show concealment, stating that, "[c]oncealment is any statement or conduct which prevents another from acquiring knowledge of a fact. Nondisclosure is a failure to reveal facts, and may exist when there is no concealment." 145 Kan. 792, 794, 67 P.2d 515, 517.

In *People v. Lefkovitz*, 294 Mich. 263, 293 N.W. 642 (1940), the

defendant was charged with misprision of a felony for not disclosing his knowledge of a robbery. In reversing the conviction the court stated:

"The term 'concealment,' as employed by Coke, means something more than mere silence or failure to disclose, unless such, in purpose, is in aid of an offender and of such nature as to constitute one an accessory after the fact.

In modern criminal law, mere nondisclosure of knowledge of crime committed by another is not misprision of felony nor any substantive crime." (294 Mich. 263, 269-270, 293 N.W. 642, 643.)

Although this was a misprision case it appears to support the position that mere nondisclosure of knowledge of the fact that a crime has been committed is not, in itself, a crime.

In interpreting a Federal misprision statute, the court in *United States v. Worcester*, 190 F. Supp. 548, 566 (D. Mass. 1961), stated:

"Even if the mere failure to disclose, without active concealment, were an offense at common law, is it an offense under 18 U.S.C. §4 [Federal misprision statute]? The federal cases just cited hold it is *not*. * * * Whatever may have been the Eighteenth Century meaning of "conceal", (See O.E.D. vol. II, p. 754), in the Twentieth Century, the Sixtieth Congress, as a matter both of literary style and of sound policy, must have intended merely to reach an active concealment."

(See also *Lancey v. United States*, 356 F.2d 407 (9th Cir. 1966).) Thus the court emphasized "active concealment" when it analyzed 18 U.S.C. §4 which holds culpable one "having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge. * * *"

*Commonwealth v. Lopes*, 318 Mass. 453, 61 N.E.2d 849 (1945), is a case somewhat similar to the present situation. In *Lopes* two co-defendants had accidentally discovered a body in the woods but did not report it for fear that their adulterous affair would become known. They were convicted of 'wilfully intending to conceal and suppress information relating to the alleged murder of one Frances McGrath" and of conspiracy to "obstruct the administration of justice by withholding knowledge of the whereabouts" of the deceased. The court court held that an evil motive to prevent or delay the adminstration of justice must be shown and that failure to disclose in this case was motivated by fear of self-incrimination "wholly unconnected with the body" and such a motive would not permit a conviction. *Lopes* is of particular import for its analysis of the common law development of misprision of a felony. Tracing the early English and American case law development, the court concluded that mere omission to disclose one's knowledge of a crime, without active concealment, was not a crime. In the instant case a joint

trial on both charges might have allowed the jury to find such a motive but we believe the prior acquittal of murder removed the question of motive from the jury. Furthermore, under the statute here under consideration, motive as discussed in *Lopes* is not an element of the offense.

In *Davis v. State*, 96 Ark. 7, 130 S.W. 547 (1910), the defendant was charged with committing the crime of abortion. The State argued that a second person was an accomplice because he was an accessory after the fact for not reporting the abortion when the defendant informed him of it. The court stated:

> "But we are of the opinion that the word 'conceal,' as here used in our statute, implies some act or refusal to act by which it is intended to prevent or hinder the discovery of the crime; that a mere failure to give information is not enough. The mere passive failure to disclose the commission of the crime would not make one an accessory after the fact under our statute. There must be some affirmative act tending toward the concealment of its commission or a refusal to give knowledge of the commission of the crime when same is sought for by the officials of the person having such knowledge." (96 Ark. 7, 13, 130 S.W. 547, 549.)

In *People v. Garnett*, 129 Cal. 364, 366, 61 P. 1114, 1115 (1900), the court stated:

> "Defendant was convicted of being an accessory to the crime of grand larceny. Section 32 of the Penal Code, under which he was convicted, reads as follows: 'All persons who after full knowledge that a felony has been committed conceal it from the magistrate, or harbor and protect the person charged with or convicted thereof, are accessories.' '
>
> The aforesaid section is not as plain and explicit as it might be by any means. At the same time the word 'conceal,' as here used, means more than a simple withholding of knowledge possessed by a party that a felony has been committed. This concealment necessarily includes the element of some affirmative act upon the part of the person tending to or looking toward the concealment of the commission of the felony. Mere silence after knowledge of its commission is not sufficient to constitute the party an accessory."

In *Ex parte Goldman*, 7 C.U. 254, 88 P. 819 (Cal. App. 1906), the defendant petitioned for a writ of habeas corpus alleging that the indictment charging him as an accessory to a crime failed to allege an offense. In discharging the defendant the court said:

> "While the existence of such knowledge was an essential ingredient of the offense at common law, still the mere neglect to disclose it or

inform the authorities that a felony had been committed did not constitute the person maintaining such silence an accessory. Bishop, Criminal Law, vol. 1, §694; Am. & Eng. Ency. of Law, vol. 1, p. 268; Blackstone Commentaries, p. 37, n. 25, 120. Section 32 of the Penal Code is but a codification of the common-law rule or definition, and hence the Supreme Court of this state has pointedly said: 'The word "conceal," as here used, means more than a simple withholding of knowledge possessed by a party that a felony has been committed. This concealment necessarily includes the element of some affirmative act upon the part of the person tending to or looking toward the concealment of the felony. Mere silence after knowledge of its commission is not sufficient to constitute the party an accessory.' *People v. Garnett, [supra]*." (7 C. U. 254, 256, 88 P.2d 819, 820.)

The court rejected the State's argument that defendant's "concealment" consisted of withholding knowledge.

■■ We believe that our legislature, in adopting sections 9—3.1 and 9—4 proscribing concealing the death intended the interpretation contained in the cases discussed above. This necessarily restricts prosecution under section 9—3.1 to situations where the body itself is concealed or where the homicidal nature of death is actively concealed, as in making a homicide appear an accident. The result sought here by the State, however, cannot be countenanced. As Mr. Chief Justice John Marshall stated in *Marbury v. Brooks*, 20 U.S. (7 Wheat.) 556, 575-76, 5 L. Ed. 522, 527, (1822), "It may be the duty of a citizen to accuse every offender, and to proclaim every offense which comes to his knowledge; but the law which would punish him in every case for not performing this duty is too harsh for man."

■■ In the instant case we find no affirmative act of concealment by the defendant. The State asserts that an inference can be drawn that defendant "dumped" the body on the secluded road to impede discovery of the crime. This statement is not supported by the evidence which indicates clearly the murder was committed where the body was found. That defendant may have taken Loveless to the secluded road with concealment in mind is but mere speculation. Defendant's denial of any knowledge to the police officer occurred after the discovery of the body and, while obviously designed to conceal involvement or even guilt, could not have concealed the death of the deceased or the homicidal means of death.

Defendant's withholding his knowledge of Loveless' death was undoubtedly an attempt to avoid self-incrimination and may even have constituted the "evil motive" discerned in *Commonwealth v. Lopes*,

*supra*, but did not constitute an offense under section 9—3.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—3.1).

The judgment of the Circuit Court of Montgomery County is reversed.

Reversed.

G. J. MORAN, J., concurs.

Mr. JUSTICE EBERSPACHER, specially concurring:

While I concur in the result, I do not agree with the reasoning by which the majority reach that result. I agree that the indictment alleged an offense under the concealment statute, but I do not believe that it can reasonably be inferred from the evidence that defendant was present at the scene or had knowledge of the homicidal death. There is evidence that leads to speculation that those things are true, but in my judgment that evidence falls far short of proving presence at the scene and knowledge of homicidal death beyond a reasonable doubt. I do not agree that prosecution under section 9—3.1 is restricted "to situations where the body itself is concealed or where the homicidal nature of death is actively concealed, as in making a homicide appear an accident" as the majority states. If the evidence of defendant's knowledge of homicidal death satisfies the requirement of being beyond a reasonable doubt as the majority infers it does, we should affirm the conviction.