THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN R. STILES, Defendant-Appellant.

Third District   No. 75-462

Opinion filed March 16, 1977.

360

Robert Agostinelli and Verlin R. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

. Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant John R. Stiles was indicted in separate counts for murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(1)) and concealment of homicidal death (Ill. Rev. Stat. 1975, ch. 38, par. 9—3.1). Following a jury trial in the Circuit Court of Kankakee County, he was acquitted of murder but convicted of concealment of homicidal death, and was sentenced to three to nine years. He contends on appeal that he was not proved guilty beyond a reasonable doubt, and that the trial court abused its discretion in imposing his sentence. We disagree.

On May 20, 1974, a deputy sheriff discovered the body of Steven Preston lying some eight feet from the top of a drainage ditch in a secluded rural area. The ditch was 10 to 15 feet deep and over 6 feet wide and the body could not be seen from the roadway. Jimmie Buttler, the

State's chief witness, pleaded guilty to murdering Preston and received a 14- to 20-year sentence for the crime. He testified that on the night of May 13, 1974, he was at the apartment of Shirley Robey with Robey, Marenda Sanford, Mrs. Preston and defendant. Steven Preston came to the apartment to see his wife, and began to argue with her about her relationship with defendant. Preston became angry when Robey asked him to leave, and he soon began arguing with Buttler too. During the argument Buttler struck Preston with his fist, breaking his hand and knocking the smaller Preston unconscious. Buttler testified that Mrs. Preston told defendant they would have to do something to her husband or else he would kill them both, and that Mrs. Preston and defendant asked him if he knew any place where they could get rid of Steven Preston. He agreed to show them a place in Hopkins Park.

Buttler, Sanford, Mrs. Preston and the victim departed in Steven Preston's car, while defendant and Robey followed behind in defendant's automobile. Buttler testified that after they arrived at the park, at Buttler's request defendant removed a tire iron from the front seat of his car, attempted to hand it to Buttler who refused to take it, and then struck the victim two or three times behind the ear. Buttler and defendant grabbed the body and threw it in an adjacent ditch. Buttler then drove Preston's car further down the lane, retrieved the tire iron and returned to defendant's car. Defendant drove everyone back to Kankakee in his car. Along the way, Sanford threw the tire iron out the window at Buttler's suggestion. Buttler testified that Mrs. Preston rifled her husband's wallet, removing a check and some cash, and then threw it out the window. Buttler continued that on May 18, he, defendant, and a friend returned to the scene with a shovel to bury the body. Preston's body could not be seen from the lane, and they left the scene without burying him. He also stated that at Mrs. Preston's urging, he and Marenda Sanford drove Preston's second car to Indiana where they tried to burn it.

On cross-examination, Buttler admitted that the tire iron actually belonged to him and that it was his idea to use it on the victim. He also admitted that in exchange for his testimony the State had promised to request the parole board to commute his sentence.

The other people who had been present at the apartment on May 13, 1974, also testified at trial and contradicted some of Buttler's testimony. Robey, Sanford and Mrs. Preston had waited in defendant's car while defendant and Buttler were with the victim. They testified that defendant returned to the car before Buttler. Robey and Sanford testified that they did not see defendant carrying a tire iron to Buttler although Mrs. Preston apparently did see this, and defendant admitted doing so. Robey stated that she did not see Mrs. Preston rifle the wallet, and Mrs. Preston said that Buttler actually removed the check from the wallet and ordered her to

cash it. All of these witnesses stated that they feared Buttler, who was physically a very large man, that he threatened them to keep their silence, and that he was totally in command during the events in question.

Defendant admitted having sexual relations with the victim's wife, but denied killing her husband or helping Buttler dispose of the body. He stated that he did not immediately realize Buttler's intention to commit murder, but that when he did he could do nothing about it. He testified that he returned to the scene on May 18 with Buttler and defendant's friend because Buttler wanted to retrieve some papers from Preston's car. Defendant admitted it was his idea to bury the body, but stated that he suggested this in order to find an excuse for bringing along another person to avoid having to be alone with Buttler.

The jury was given the following instruction, tendered by the defendant and objected to by the State concerning the word "conceal":

> "When I use the word, conceal, I mean something more than simple withholding of knowledge or failing to disclose but including some affirmative act on the part of the person looking toward the concealment of the homicidal death."

After deliberation, the jury acquitted defendant of murder but found him guilty of concealing a homicidal death.

Defendant's first contention is that he was not proved guilty beyond a reasonable doubt of the offense of concealing a homicidal death under section 9—3.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—3.1), which provides:

> "§9—3.1 Concealment of Homicidal Death.
>
> "(a) A person commits the offense of concealment of homicidal death when he conceals the death of any other person with knowledge that such other person has died by homicidal means.
>
> (b) Nothing in this Section prevents the defendant from also being charged with and tried for the murder or manslaughter of the person whose death is concealed."

We have found only three Illinois decisions involving this statute. The first is *People v. Dyer* (5th Dist. 1975), 28 Ill. App. 3d 436, 328 N.E.2d 716. In *Dyer*, the defendant was charged with murder and concealment of homicidal death in connection with the shooting of a companion following an altercation between the two men. Although a witness testified that the defendant shot the victim, the jury acquitted him of murder. On the charge of concealing homicidal death, for which the defendant was convicted, the jury believed the testimony of this same witness that subsequent to the shooting, defendant had tried to convince the police that the vehicle used to transport the victim was stolen and that he had thrown the murder weapon into a pond. In affirming the conviction, the court noted that this evidence was sufficient to prove that

"the defendant knew that Campos died as a result of a homicide and that the defendant took deliberate measures in an attempt to conceal such death." 28 Ill. App. 3d 436, 439, 328 N.E.2d 716, 719.

The second case, *People v. Vath* (5th Dist. 1976), 38 Ill. App. 3d 389, 347 N.E.2d 813, clarified the *Dyer* decision by specifically holding that concealment requires proof of acts or conduct calculated to conceal a homicidal death, that concealment requires more than mere silence, and that acquittal for murder or manslaughter, and conviction for concealing homicidal death are not legally inconsistent verdicts. The majority's construction limits the statute to situations where the body is concealed or where the homicidal nature of the death is actively concealed, as in making a homicide appear to be an accident. The third Illinois case, *People v. Coslet* (4th Dist. 1976), 39 Ill. App. 302, 349 N.E.2d 496, is a perfect example of an actively concealed homicidal death.

■■ The offense of concealing homicidal death is comprised of two main elements: knowledge that a homicidal death had occurred and some affirmative act of concealment of the death by the defendant. (*People v. Vath* (5th Dist. 1976), 38 Ill. App. 3d 389, 347 N.E.2d 813; *People v. Dyer* (5th Dist. 1975), 28 Ill. App. 3d 436, 328 N.E.2d 716.) We agree with the court in *Vath* that mere silence is insufficient to establish concealment. We also think that section 9—3.1 requires the State to prove that the defendant had the specific intent to conceal a homicidal death. We hold therefore, that a conviction under section 9—3.1 is appropriate where the evidence establishes that a homicide has occurred, that the defendant knew both the fact and cause of death, and that he took affirmative steps to conceal the homicide with the specific purpose of preventing or delaying its discovery.

Defendant contends that the State failed to prove that his conduct "in fact" prevented or delayed discovery of the homicide. We reject this contention as an attempt to read into the statute a requirement not intended by the legislature. Furthermore, in this case a one-week delay in discovery did occur since it was difficult to see the corpse while traveling the roadway or lane.

■■ Defendant next claims that the proof did not show any affirmative act of defendant which was intended to conceal the homicidal death. However, there was evidence of defendant's direct and active involvement in placing Preston's body in the drainage ditch, thereby concealing the body from the view of persons using the lane where the homicide occurred. The jury was fully justified in drawing an inference that the body was placed in the ditch with the intention of concealing it from the view of passersby.

■■ In light of our construction of section 9—3.1, the "concealment" instruction given by the court to the jury was entirely correct.

■■ After reviewing the record, we believe the evidence at trial was sufficient to sustain defendant's conviction. Defendant's own testimony established a homicidal death and defendant's presence and, according to Buttler, defendant helped put the body in the ditch. In addition, by his own admission, defendant later suggested to Buttler that they bury the body, which indicated a specific intent to conceal the homicide. Finally, the body was not discovered for over a week.

Obviously the jury did not believe Buttler's testimony that defendant murdered Preston. As to the crucial fact of whether defendant helped put the body in the ditch, Buttler's testimony was contradicted only by defendant. Moreover, the fact that defendant and Buttler were alone with the victim coupled with the fact that Buttler's hand was broken tends to negate the possibility that Buttler disposed of the body by himself. Since the weight of the evidence and the credibility of witnesses are matters for the jury (*People v. Baker* (1959), 16 Ill. 2d 364, 158 N.E.2d 1), the jury here could have, and apparently did, believe Buttler when he said defendant helped dispose of the body. (*Cf. People v. Dyer* (5th Dist. 1975), 28 Ill. App. 3d 436, 328 N.E.2d 716.) We will not disturb the jury's verdict where it is plainly apparent to us that the accused was proved guilty beyond a reasonable doubt. (*People v. Baker.*) Accordingly, we affirm the defendant's conviction for concealing a homicidal death.

■■ The final question is whether the trial judge abused his discretion in sentencing the defendant to three to nine years. We think not. Section 5—8—1(c)(4) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(4)), requires the judge to consider, *inter alia*, the nature and circumstances of the offense when he imposes sentence on the defendant. We have read the record in this case and agree with the trial judge that Preston's murder was not only senseless, premeditated, and brutal, but that defendant's role in the death was extensive and intentional. We disagree with the defendant that the trial judge had to ignore everything he had heard about the case which did not pertain directly to the charge of concealing homicidal death.

The trial judge's statements that he would have found defendant guilty of murder had he been hearing the case without a jury were inappropriate. Nonetheless, since these statements were made out of the presence of the jury, and since the judge specifically stated that he based the sentence on his consideration of the nature and circumstances of the case, we conclude that the sentence was proper.

Accordingly, the judgment of conviction and sentence entered by the Circuit Court of Kankakee County is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.