THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES FRANKLIN, Defendant-Appellant.

Fifth District   No. 5—84—0405

Opinion filed January 9, 1985.

Randy E. Blue and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Charles Franklin, was indicted for concealment of homicidal death (Ill. Rev. Stat. 1983, ch. 38, par. 9—3.1). Following a jury trial in the circuit court of St. Clair County, he was convicted and sentenced to a three-year term of imprisonment. Defendant contends on appeal that he was not proved guilty beyond a reasonable doubt and that he was denied his right to a fair trial when the trial court precluded him from presenting evidence as to the State's chief witness' motivation to testify falsely.

The testimony shows that on Sunday, December 5, 1982, at approximately 1 p.m., Aileen Johnson was riding in East St. Louis in a

car driven by George Stallion. When Mr. Stallion stopped the car next to a field at McCasland and 15th streets, Ms. Johnson saw a tennis shoe sticking up in the weeds. Mr. Stallion approached the shoe and discovered that it was attached to a body. An East St. Louis patrolman, a detective and an evidence technician were dispatched to the scene, where they observed the body of a Negro male lying face down in the trash and weeds with his hands and feet tied behind him and with a gag in his mouth. The body was inside what looked like some kind of bedcover or furniture cover. Because of the way the victim was bound and gagged and because no signs of struggle were seen, the detective and the evidence technician testified that it appeared to them that the crime had occurred elsewhere and the body was then dumped where it was found. The area where the body was found was described as being a trash dump in an empty field in an out-of-the-way area. Two bullet slugs were recovered when the clothing and cover were removed. When the body was discovered, there was a large amount of blood on the victim's jacket and some blood on the cover, although the blood had not soaked through the cover. Later, through fingerprints, the body was identified as that of Stephan Rollins.

The coroner's pathologist who conducted an autopsy on the body about 8 a.m. on December 6, 1982, concluded that the cause of death was seven gunshot wounds to the chest which had entered from behind between the shoulder blades, penetrating the. heart, and then exiting the chest wall. The pathologist testified that Rollins would have died instantly and in her opinion had been dead about 24 hours at the time of the autopsy. In addition to the wounds, she discovered a large bump or abrasion on Rollins' forehead.

Steven Griffin testified that he had known Rollins, the victim, since he (the victim) was a child. He knew that Rollins had broken into a van belonging to someone named Breadman because Griffin bought the stereo equipment taken out of the van. Breadman worked at Conrad's Tavern in East St. Louis (about five blocks east of where the body was found) as a disc jockey, and his van was parked at the tavern at the time of the theft. Griffin saw Rollins on the evening of December 4, 1982, at Griffin's cousin's house, when Rollins, who was perspiring and breathing heavily, said that somebody had just shot at him. Griffin told him to leave the area, which Rollins did, telling Griffin he was going to the house of his girlfriend, Rokeena Wright. Sometime after Rollins left, another person came to Griffin's cousin's house and told Griffin to go to Conrad's Tavern. Griffin did so, and when he walked inside the tavern, he saw the tavern owner, Lloyd Conrad, and his cousin, Larry Hicks, standing behind the bar. Conrad

called Griffin over and took him to his office, a back room, inside which Griffin saw the defendant, whom he called "Butch," and Rollins, who was "laying on the floor hog-tied with a rag in his mouth and ropes tied around his arms and legs." Griffin could tell that Rollins was still breathing because he could still see his chest moving up and down. While Conrad, Hicks, and Griffin were standing in the doorway, Hicks started asking Griffin about the stereo equipment, to which Griffin responded that he had given it to his brother in Decatur. The defendant then pulled a pistol out of his back pocket and said, "This boy is going to die tonight." When Griffin asked why, the defendant told him to shut up, at which point Griffin backed out of the office door, left the tavern, and went home. Griffin testified that he did not call the police that night because he feared for his own life. He learned the next afternoon that Rollins had been found in some weeds somewhere shot seven times. Griffin identified Rollins from pictures of the scene where the body was discovered, stating that Rollins had been wearing the same clothes and had been bound and gagged in the same manner when he last saw Rollins alive at Conrad's. Griffin finally told the police about what had occurred when he decided to leave town because defendant was threatening to kill Griffin's cousins and Rollins' friends. At the time he made the statement Griffin was in the East St. Louis jail, having been arrested for allegedly carrying an unregistered gun. Griffin admitted that he did not leave the East St. Louis area for Florida until March 1984 because he was waiting for his divorce to be final.

Rokeena Wright testified that between 7 p.m. and 8 p.m. on December 4, 1982, Rollins came into her apartment in East St. Louis. He was breathing heavily and appeared nervous and excited, saying that someone had been chasing him and trying to shoot him. He told her that he was in trouble for having stolen some equipment from Conrad's Tavern. Wright testified that Rollins left her apartment about 12:30 a.m. after she cautioned him to stay away from Conrad's.

Officer Marion Hubbard testified that between 10 and 11 p.m. on December 4, 1982, he answered a "fight in progress" call at Conrad's Tavern. The place was crowded, with music playing, and after talking with the owner and a few patrons, he concluded after only checking the front room of the bar that there was no disturbance and left.

Goldie Truss, a regular at Conrad's, testified that on the evening of December 4, 1982, she saw defendant leave the tavern between 10 and 11 p.m. carrying something. She just glanced at the back of his head as he left and could not remember how big the bag was other than he carried it in his hands; it was larger than a grocery bag and

could have been the size of a garment bag. Truss remembered that she told the grand jury that two people could have been carrying the bag and that it appeared to be heavy and pretty large and that whatever was inside was balled up. On cross-examination, Ms. Truss explained that she had tried to tell the grand jury that she could not clearly remember anything because she was intoxicated from drinking for five or six hours at the tavern.

Daphne Truss, Goldie's daughter, testified that she dropped by the tavern between 10:30 p.m. and 10:45 p.m. on that evening to talk to her mother. As she was getting into the car to leave, she glanced back and saw defendant coming out carrying something that looked like a trash bag. She thought just one person put the bag in the back of a pickup truck but she recalled telling the grand jury that she saw the defendant and Conrad carrying a large green clothing bag. She conceded on cross-examination, however, that she was not really sure of anything that she saw.

Ponce Weston testified that he arrived at Conrad's about 10:30 p.m. on December 4, 1982, and stood outside drinking with his friend, Charles Hicks. He saw the defendant come out of the tavern carrying a large bag. He could tell that the bag was not empty because it made a sound when it was thrown on the back end of the pickup truck. The defendant then got in the back end of Conrad's truck with the bag, and Conrad drove away. He recalled telling Charles Hicks afterward that they should go get another drink, but Weston agreed that he might have told the police on April 30, 1983, that he had said to Hicks, "Let's get the hell out of here." Weston stated on cross-examination that he had been drinking throughout the afternoon of December 4. He also stated that he gave the police the statement he gave because they scared him and made him feel that he had done something wrong.

Charles Hicks, who recalled arriving between 11 and 11:30, corroborated Weston's account. Hicks described the bag as a "traveler's bag" and stated he just glanced at the defendant with the bag because it was normal for people to take things in and out of the place. Hicks did not think the bag was empty because of the way defendant was carrying it.

A police search of Conrad's Tavern, conducted six months later, on May 3, 1983, found only a single hole in the paneling, but it could not be determined if it was made by a bullet.

The defendant presented no evidence. After deliberation, the jury found defendant guilty of concealing a homicidal death.

Defendant's first contention on appeal is that he was not

proved guilty beyond a reasonable doubt of the offense of concealing a homicidal death (Ill. Rev. Stat. 1983, ch. 38, par. 9—3.1), where the State's evidence was wholly circumstantial and where important corroborating evidence was missing. Defendant further argues that there was no showing that that Rollins (the victim) was dead when the alleged act of concealment occurred.

Section 9—3.1(a) of the Criminal Code of 1961 provides:

> "A person commits the offense of concealment of homicidal death when he conceals the death of any other person with knowledge that such other person had died by homicidal means." (Ill. Rev. Stat. 1983, ch. 38, par. 9—3.1(a).)

The statute contains two elements whose presence must be established in order to prove the offense: knowledge that a homicidal death had occurred, and some affirmative act of concealment of the death by the defendant. *People v. Vath* (1976), 38 Ill. App. 3d 389, 347 N.E.2d 813; *People v. Dyer* (1975), 28 Ill. App. 3d 436, 328 N.E.2d 716.

Turning to defendant's argument regarding circumstantial evidence, we note that in this case the evidence is concededly circumstantial. Circumstantial evidence can generally supply the basis for a conviction if it is inconsistent with any reasonable hypothesis of innocence. (*People v. Rhodes* (1981), 85 Ill. 2d 241, 249, 422 N.E.2d 605, 608.) While circumstantial evidence must produce a reasonable and moral certainty that the defendant committed the crime (*People v. Berland* (1978), 74 Ill. 2d 286, 308, 385 N.E.2d 649, 659), the jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but rather it is sufficient if all the evidence taken together satisfies the jury beyond a reasonable doubt of defendant's guilt (*People v. Williams* (1977), 66 Ill. 2d 478, 485, 363 N.E.2d 801, 804). The jury is not required to search out all possible explanations compatible with innocence and raise them to the level of reasonable doubt, but instead is entrusted with determining whether a reasonable hypothesis of innocence exists. (*People v. Rhodes* (1981), 85 Ill. 2d 241, 249, 422 N.E.2d 605, 608.) Proof of guilt beyond a reasonable doubt does not require proof beyond any possibility of a doubt. (*People v. Branion* (1970), 47 Ill. 2d 70, 77, 265 N.E.2d 1, 5.) Whether or not a reasonable hypothesis of innocence has been shown is to be determined by the jury, and this determination will not be disturbed on review unless the proof is so unsatisfactory as to cause a reasonable doubt of guilt to appear. *People v. Ellison* (1981), 100 Ill. App. 3d 282, 289, 426 N.E.2d 1058, 1063.

■ Defendant contends that the testimony of the State's chief witness, Steve Griffin, was both incapable of belief and questionably motivated. The defendant states that Griffin's story is incredible when one considers that Griffin went home, without making an anonymous call to the police, after seeing a neighborhood friend lying hog-tied on the floor of a bar being threatened with death by the defendant waiving a gun. Even more incredible, according to defendant, is that Griffin would have waited for more than a year to report the crime, particularly when the victim was his friend, and not until he himself was in jail on a weapons charge.

The credibility of Griffin was a matter to be determined by the jury in this case. (*People v. Foster* (1979), 76 Ill. 2d 365, 373, 392 N.E.2d 6, 9.) We see no reason to reverse the jury's determination that Steve Griffin was a credible witness. He was not impeached, and he was not contradicted by established facts or by the testimony of any other witness. Furthermore, his testimony was corroborated in significant respects by other witnesses. Griffin's testimony concerning a motive for the killing of Rollins, to punish him for the theft of stereo equipment, was corroborated by Rokeena Wright. Wright also corroborated Griffin's testimony that someone was chasing Rollins shortly before his death. In addition, Rollins went from Griffin's cousin's home to Rokeena Wright's apartment shortly before he was killed, as he told Griffin he intended to do. Also, Griffin's description of Rollins' clothing and the manner in which he was bound and gagged when he saw him on the tavern floor was corroborated in every respect by the three East St. Louis police personnel who were present at the dump site investigating the crime, leaving no doubt that Griffin in fact saw Rollins shortly before he was murdered. Additionally, four witnesses other than Griffin placed the defendant in Conrad's Tavern in the company of Conrad, carrying a bag large enough to contain a body out of the tavern. Griffin explained the reason for his delay in reporting the crime as being his knowledge of threats on the victim's friends and his cousins, coupled with a fear that he himself would be killed if he made a statement. A delay in reporting a crime prompted by fear does not destroy a witness' credibility. (*People v. Hayes* (1979), 70 Ill. App. 3d 811, 822, 388 N.E.2d 818, 826.) Given the extent of corroboration of Griffin's testimony, the jury was entitled to believe his testimony.

■ Besides Griffin, defendant also attacks the credibility of two of the tavern witnesses, Goldie Truss and Ponce Weston, contending they were not to be believed because they admitted that they were intoxicated. However, the testimony of both of these witnesses, that

they saw the defendant carrying a large bag out of the tavern on December 4, 1982, was corroborated by two other tavern witnesses, Daphne Truss and Charles Hicks. Daphne Truss and Charles Hicks and Ponce Weston all saw the defendant load the bag on the back end of Conrad's pickup truck. Weston testified that Conrad entered the cab of the pickup to drive it away while the defendant got in the back end of the truck with the bag, which seems unusual to us considering defendant's speculation that the bag defendant was carrying was simply trash.

■ Besides attacking the credibility of the State's witnesses, the defendant argues that the State's case is seriously undermined by their failure to call Larry Hicks or to explain his absence. Defendant argues that Hicks was present in Conrad's back office when the defendant allegedly confronted Griffin and threatened Rollins' life, that he presumably remained there after Griffin left, and was therefore in a good position to know what happened afterward, but he was never called as a witness by the State to corroborate Griffin's story. The defendant asserts this failure raises the inference that Hicks' testimony would have been unfavorable. We find that no such inference can be drawn under the circumstances. Hicks was an associate of Conrad and the defendant and was not a neutral occurrence witness. Hicks was not equally accessible to the State, and therefore the State's failure to call him did not create any adverse inference. (See *People v. Bianchi* (1981), 96 Ill. App. 3d 113, 116, 420 N.E.2d 1187, 1190; *People v. Beller* (1977), 54 Ill. App. 3d 1053, 1058, 370 N.E.2d 575, 579.) We further note that defendant has the right to summon all witnesses necessary for his defense. If the defendant cannot get the witness to appear, he can request the court to call him as a court's witness. In any event, the State is not required to call all possible witnesses to prove a case beyond a reasonable doubt. *People v. Hayes* (1979), 70 Ill. App. 3d 811, 823, 388 N.E.2d 818, 827.

■ The defendant makes the additional argument that even if the State's witnesses were credible, their testimony failed to establish that Rollins was dead, as opposed to being bound and gagged or unconscious when his body was spirited out of the tavern in a bag and thrown on the back end of a pickup truck, and thus defendant could not be guilty of concealing a homicide. In supporting this, defendant points to Griffin's testimony that Rollins was still alive when he left the tavern. Our review of the evidence leads us to the conclusion that there was sufficient circumstantial evidence from which the jury could infer that the victim was dead when his body was concealed and removed from the tavern and that the defendant was guilty of conceal-

ing a homicidal death. Both an East St. Louis detective and an East St. Louis evidence technician who were at the scene where the body was found testified that, because of the way the victim was bound and gagged and because no signs of a struggle were seen, it did not appear to them that the crime had occurred where the body was discovered, but rather "it appeared to be a dump." The pathologist testified that the cause of death was seven gunshot wounds to the chest which entered from behind between the shoulder blades, penetrating the heart and then exiting the chest wall. While the physical evidence showed that there were bullet holes in the victim's clothing corresponding to the wounds found on the body, the blue cover in which the body was concealed when it was found was not pierced by bullets. Additionally, there was a large amount of blood on the victim's jacket and some blood on the cover, although the blood had not soaked through the cover. Further, there is the testimony of Steve Griffin that Rollins was bound and gagged in the same manner at the dump site as when he saw him on the floor of the back room of the tavern. In conjunction with this is Griffin's testimony that the defendant pulled out a gun and said that Rollins was going to die that night. There is the testimony of four witnesses that defendant carried a bag large enough to hold a body out of the tavern and that he thereafter loaded it onto the back of the pickup. The body was found only five blocks from the tavern. It is the function of the jury in this case to determine the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence, and where the evidence is merely conflicting, we will not substitute our judgment for that of the jury. (*People v. Foster* (1979), 76 Ill. 2d 365, 373, 392 N.E.2d 6, 9.) We find that based on the evidence before us the jury could reasonably infer that Rollins was killed in the back room of the tavern and that his lifeless body was then removed from the tavern by defendant and later dumped at the site where it was found.

    ▪ The defendant's second contention on appeal is that he was denied his right to a fair trial when the trial court precluded him from presenting evidence as to Steve Griffin's motivation to testify falsely. The defendant contends that the trial court erred in refusing to permit him to ask Steve Griffin about his attack on a cellmate. Defendant suggests that this inquiry would have established that Griffin was motivated to give a false statement to the police in order to induce the State to refrain from prosecuting him for aggravated battery. The defendant failed to raise this cross-examination issue (although he raised four others) in his motion for a new trial, and, accordingly, it is

waived and cannot now be urged as a ground for reversal on review. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857.

In summary, although the defendant has ably pointed out weaknesses in the State's proof, we cannot say that these efforts of the defendant created a reasonable doubt of guilt. At best, the defendant has raised questions of fact and credibility properly left for resolution by the jury. (*People v. Miller* (1980), 79 Ill. 2d 454, 466, 404 N.E.2d 199, 205; *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.) From our examination of the record, we conclude the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of concealing a homicidal death.

Affirmed.

JONES, P.J., and KARNS, J., concur.