THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NEIL MUELLER, Defendant-Appellant.

Fourth District   No. 4—84—0194

Opinion filed January 30, 1985.

J. H. Weiner and Walter H. Kasten, both of Springfield, for appellant.

386

John F. Dahlem, State's Attorney, of Virginia, for the People.

JUSTICE MILLS delivered the opinion of the court:

Concealment of homicidal deaths.

Tried at bench—guilty—30 months' probation.

We affirm.

Neil Mueller shot and killed Art Pierson and his son, Roscoe Pierson, on April 17, 1982, in Scott County.

Immediately after the shootings, Mueller placed the bodies in his pickup truck, drove to his farm in Scott County, and put the bodies in a hogpen. Upon returning to the farm after dinner, Mueller waited for his wife to retire and go to sleep. He then loaded the bodies back in his truck, drove into Cass County, and dumped the bodies off a bridge over Clear Creek.

Several days later, Mueller voluntarily told the police that he shot the Piersons and put their bodies in Clear Creek. Both bodies were subsequently recovered from Indian Creek, which is downstream of Clear Creek.

The Scott County State's Attorney charged defendant with the murders of Art and Roscoe Pierson. The murder trial was held in Sangamon County after Mueller moved for a change of place of trial. At the murder trial, he admitted to shooting Art and Roscoe Pierson. He testified that, prior to the shooting, Art Pierson had threatened him on several occasions by stating he would "blow [defendant's] head off." On one occasion, Art Pierson, while driving a logging truck, had forced defendant's car off the road into a ditch.

Mueller further testified that on the day of the shootings he was helping his brother check the condition of some cows which had been recently attacked by coyotes. Mueller was carrying a shotgun at that time. As he was chasing a calf, he came upon Art and Roscoe Pierson. He testified that Roscoe was armed with a pistol and "shot once or twice." Mueller returned fire with his shotgun. Art Pierson then came at Mueller with a chainsaw and Mueller shot him also.

The Sangamon County jury found Mueller *not guilty* of the murders of Art and Roscoe Pierson. On January 31, 1983, about 10 days after Mueller's acquittal for the murders, the Cass County State's Attorney filed charges against him for the concealment of the homicidal deaths of Art and Roscoe Pierson. (An amended information charged that Mueller concealed the Piersons' deaths by placing their bodies in Clear Creek.)

Defendant filed a motion to dismiss the charges of concealment on the grounds that the prosecution was barred by defendant's acquittal

in the former murder prosecution. At the hearing on the motion to dismiss, the parties stipulated that prior to defendant's trial for murder the Scott County State's Attorney agreed with the Cass County State's Attorney that defendant would be prosecuted in Scott County for murder only and that the Scott County State's Attorney would not pursue prosecution for the concealment of the deaths.

Defendant's motion to dismiss was denied. After waiving a jury trial on the concealment charges, all of the evidence was stipulated to, defendant was found guilty and sentenced to 30 months' probation, 100 days of work release, and fined $20 pursuant to the Crime Victims Compensation Act (Ill. Rev. Stat. 1981, ch. 70, par. 71 *et seq.*).

I

Defendant argues that the prosecution for the concealment of the homicidal deaths was barred under section 3—4(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 3—4(b)(1)). This section provides in part:

"(b) A prosecution is barred if the defendant was formerly prosecuted for a different offense *** if such former prosecution:

(1) Resulted in either a conviction or an acquittal, *and the subsequent prosecution is for an offense of which the defendant could have been convicted on the former prosecution ***.*" (Emphasis added.)

Defendant argues that he *could* have been convicted of concealment in the murder prosecution because the concealment of the homicidal deaths originated in Scott County and the Scott County State's Attorney knew of the concealment at the time he charged defendant with murder. Defendant adds that evidence of the concealment had been introduced by the State in the murder trial to rebut his evidence of self-defense. Defendant's argument rests on the premise that, as to each body, there was only one offense of concealment which originated in Scott County and continued into Cass County.

The State argues that section 3—4(b)(1) did not bar the prosecution for concealment of the homicidal deaths in Cass County. The gist of the argument is that defendant committed the offense of concealment of a homicidal death in Cass County by dumping the bodies into Clear Creek and that this offense was separate and distinct from any offense arising from acts occurring in Scott County. The State argues, therefore, that since the Scott County State's Attorney had no authority to prosecute defendant for an offense occurring in Cass County, defendant could not have been convicted of such an offense in

the murder trial. The State argues, therefore, that because defendant could not have been convicted of this offense in the murder trial, section 3—4(b)(1) of the Criminal Code of 1961 would not preclude the Cass County State's Attorney from charging defendant with the concealment of homicidal deaths in Cass County.

We must decide, therefore, whether defendant's act of dumping the bodies in Clear Creek constituted an offense of concealment of homicidal deaths distinct from any possible offenses arising from his placing the bodies in his hogpen in Scott County.

The legislature has defined concealment of a homicidal death as follows:

"A person commits the offense of concealment of homicidal death when he conceals the death of any other person with knowledge that such other person has died by homicidal means." (Ill. Rev. Stat. 1981, ch. 38, par. 9—3.1(a).)

The offense of concealment of a homicidal death is comprised of two elements: (1) knowledge that a homicidal death has occurred; and (2) some affirmative act of concealment by the defendant. *People v. Mahon* (1979), 77 Ill. App. 3d 413, 395 N.E.2d 950; *People v. Stiles* (1977), 46 Ill. App. 3d 359, 360 N.E.2d 1217.

To determine whether defendant's actions in Cass County gave rise to an offense of concealment distinct from any offenses arising from actions in Scott County, we begin with the supreme court's decision in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. In *King*, the court formulated the basis by which a defendant could be convicted and sentenced on multiple offenses arising from interrelated acts. To this end, the court defined "act" as "any overt or outward manifestation which will support a different offense." (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45.) In applying *King*, the supreme court stated in *People v. Myers* (1981), 85 Ill. 2d 281, 288, 426 N.E.2d 535, 538: "As long as there are multiple acts as defined in *King*, their interrelationship does not preclude multiple convictions and the imposition of concurrent sentences based upon them."

Factors considered by some courts in determining whether conduct should be considered as one act or multiple acts is the time interval between the actions and the locations in which the actions occur. (See *People v. Davis* (1981), 100 Ill. App. 3d 268, 426 N.E.2d 1047; *People v. Connor* (1980), 82 Ill. App. 3d 652, 402 N.E.2d 862; *People v. Childs* (1978), 62 Ill. App. 3d 924, 379 N.E.2d 721.) However, courts have found multiple acts even in cases involving repeated

blows with a knife or fist in quick succession. In *People v. Post* (1982), 109 Ill. App. 3d 482, 440 N.E.2d 631, the defendant was convicted and sentenced for (among other things) four counts of aggravated battery. The evidence showed that the defendant attacked the victim in an alley, stabbing him once in the back and three times in the thigh. The defendant argued on appeal that because the acts involved were identical, directed against a single victim, and occurred in rapid succession, they could give rise to only one aggravated battery conviction. The court rejected this argument and affirmed the four aggravated battery convictions on the grounds that there were four distinct acts of stabbing and the offenses were not included offenses. See also *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.

The court noted in *Post* that each of the four aggravated battery offenses required proof of a different element, namely, aggravated battery using a deadly weapon, aggravated battery causing great bodily harm, aggravated battery causing permanent disability, and aggravated battery causing permanent disfigurement. We do not believe, however, that *King* would preclude multiple convictions for identical offenses so long as the multiple act requirement was met.

■ We find that defendant's act of dumping the bodies in Clear Creek, in conjunction with his knowledge that homicidal deaths had occurred, constituted the offense of the concealment of a homicidal death. Moreover, this offense was distinct from any offense arising from acts performed or offenses committed in Scott County. The Scott County State's Attorney could not have properly instituted charges against defendant for the offenses of concealment committed in Cass County. (See *People v. Simpson* (1977), 54 Ill. App. 3d 504, 369 N.E.2d 915.) Since defendant could not have been properly charged with this offense, he could not have been convicted of it in the prior prosecution for murder.

We in no way condone the State's lying-in-the-weeds tactics of prosecuting defendant for the concealment of the bodies shortly after he was acquitted on the murder charges. Nevertheless, we are constrained to hold that the prosecution for concealment of the homicidal deaths in Cass County was not barred by section 3—4(b)(1) of the Criminal Code of 1961.

## II

Defendant next argues that the prosecution of the concealment charges violated his fifth amendment right by placing him in jeopardy twice for the same offense. We find no merit in this argument.

■ Where the offenses are distinct in law, the defense of former

jeopardy is not available, regardless of how closely the offenses are connected in point of fact. (*People v. Knapp* (1959), 15 Ill. 2d 450, 155 N.E.2d 565; *People v. Koblitz* (1948), 401 Ill. 224, 81 N.E.2d 881.) In the present case, not only are the murder and concealment charges distinct in law, but the facts giving rise to each offense were clearly separate and distinct. All of the cases cited by defendant in his brief involve situations where the subsequent prosecution was based on the same act which gave rise to the former prosecution.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.