THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS E. MITCHELL, Defendant-Appellant.

First District (2nd Division) No. 83—2389

Opinion filed November 27, 1984.

Sam Adam and Clarence Burch, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Bernard J. Murray, Assistant State's Attorneys, of

counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Defendant, Thomas E. Mitchell, was indicted on two counts of delivery of a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(c)), and convicted by a jury of possession of a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1402). The jury found him not guilty of delivery. On appeal, defendant raises the following issues: (1) whether he was denied a fair trial because the State was allowed to introduce evidence of other crimes allegedly committed by him; (2) whether the jury was erroneously instructed on the offense of possession of a controlled substance; (3) whether the trial court properly excluded defense evidence which was offered to show a motive of the State's witness to fabricate; and (4) whether the trial court wrongfully allowed impeachment of a defense witness.

Defendant, who at the time relative to the events involved in this case was a police officer with the Chicago police department, was indicted on two counts of delivery of less than 30 grams of cocaine which allegedly occurred on July 16, 1981. On motion of defendant, one count was dismissed.

William A. Haley, special agent with the Illinois Division of Criminal Investigations, testified on behalf of the State that on the evening of July 15, 1981, he was introduced to Maurice Nix by Sergeant Eddie Green of the internal affairs division of the Chicago police department. Haley also stated that Nix had felony charges pending against him. Shortly after midnight, Haley went with Nix to Madam Andre's Lounge on North Wells Street in Chicago. They then proceeded to the Get Down Lounge, also located on North Wells, where they saw defendant and his partner, Officer Lawrence Terry. After being introduced to defendant and Terry, Haley said that he "wanted to cop some girl for the head." Haley testified that "cop" means purchase and "girl" is slang for cocaine. Nix asked defendant and Terry if they had any, and they responded "no." Defendant, however, remarked that he would attempt to locate some "girl" and exited the lounge. Haley later saw defendant outside and inquired whether he had located any cocaine. Defendant pointed out a male named "Boston" as someone who could take care of getting anything Haley wanted. Haley and Nix then conversed with Boston. Thereafter, Haley returned to defendant and asked him if he could get Boston's price lowered. Defendant agreed to talk to Boston, which he did.

Boston then walked into the lounge, followed by Haley and Nix. Haley gave Nix $100 in cash, and Nix approached Boston in the rear

of the lounge. Haley walked to the rear, whereupon Nix handed him three paper packages of purported cocaine. Boston obtained change then gave Nix $14, which Nix handed to Haley. At that time it was approximately 2:25 a.m., and Haley exited the lounge.

After meeting with members of his surveillance team for a few minutes at a different location, Haley returned to Madam Andre's Lounge. There he observed defendant, Terry, and a man introduced as defendant's cousin. Haley told defendant that the "girl" was good, and defendant responded that it was supposed to be. After Terry and defendant's cousin left, Haley asked defendant for more cocaine. Defendant commented that Boston had already departed. Haley then observed Nix and defendant conversing and later followed Nix and defendant into the restroom area and had a conversation with defendant. Haley removed $80 from his pocket and handed it to defendant. Haley and Nix then entered the restroom. As they were leaving, they observed defendant walking towards them. They returned to the restroom, waited for defendant to enter, and then started to leave again. Nix talked to defendant outside of the restroom and motioned to Haley to go back in. As Haley did, he turned and saw defendant hand Nix four tinfoil packets. Nix turned around, took two steps, and handed the packets to Haley. Nix and Haley then returned to the restroom and closed the door.

Haley placed the packets into his pants pockets, and Nix exited. As Haley was leaving, he was approached by defendant, whom he told that the packages looked good. Thereafter, he told defendant that he was going to pay him a finder's fee, and defendant stated that he did not want money, but wanted some of the package Haley had just received. Haley gave defendant one of the packets and left the restroom area. Haley also testified as to the chain of custody of the remaining three packets. On cross-examination, Haley testified that defendant never gave him any cocaine directly on July 16, but only that he received the cocaine from Boston and Nix.

During defendant's case, Sergeant Green testified that he had spoken to Nix on numerous occasions, the latest being in March of 1983, two months prior to trial. Green admitted that on July 16, he knew of Nix's pending drug charge. The State's objections to queries by defense counsel as to Green's knowledge of the disposition of the drug possession charge were sustained. On cross-examination, Green stated that he had a warrant for Nix's arrest, and that he had unsuccessfully been trying to bring Nix in as a witness for the trial.

Defendant next presented Officer John Suddie of the Chicago police department, who related that on March 7, 1981, he arrested Nix.

In response to the State's objection, Suddie was not allowed to testify about the reason for Nix's arrest and whether he was charged with an offense. At a side bar, defense counsel made an offer of proof and submitted a complaint for preliminary hearing wherein Suddie stated that Nix committed the offense of possession of a controlled substance, cocaine. Officer James McKeon of the Chicago police department was called next, and he stated that on March 5, 1981, he arrested Nix. Objections to defense counsel's repeated questions regarding whether any charges were filed against Nix were sustained.

The next defense witness was Officer Lawrence Terry, defendant's partner. He stated that he was familiar with the Get Down and Madam Andre's lounges for both official and nonofficial reasons. Terry said he knew Nix as the bartender and occasional patron of the Get Down Lounge, and never had any dealings with him other than Nix serving him a drink or lightly conversing with him. Terry also denied knowing William Haley or a person named Boston and denied engaging in any conversation about cocaine on July 16. During cross-examination, Terry stated that he probably was in Madam Andre's Lounge during mid-July, but he never met anyone that was introduced to him by Nix. Further, he did not remember any conversation in Madam Andre's with anyone who was with Nix concerning cocaine usage. Terry was suspended from the police department in early September 1981 for alleged delivery of cocaine to Haley on July 17, 1981. He claimed that he did not see any cocaine at the Get Down Lounge on July 16 or 17 of 1981.

Defendant testified on his own behalf and denied any involvement in the drug conversations or drug dealings in question. He stated that some time in the summer of 1981, Nix was introducing Haley at the two lounges as Nix's cousin. Outside of the presence of the jury, defendant made an offer of proof that Nix had offered to be an informant for defendant in order to gain leniency on his two felony charges. Defense counsel also stated that a court reporter would testify as to her notes of proceeding for August 18, 1981, when the State nol-prossed Nix's charges. An assistant State's Attorney would also testify that Nix's charges were dropped as a result of his undercover work for the police. The court refused to allow this in evidence.

The jury found defendant not guilty of the offense of delivery of cocaine and guilty of the offense of possession. Defendant received a two-year prison sentence and was fined $5,000.

I

Defendant strongly urges that he was denied a fair trial because

the State was allowed to introduce highly prejudicial testimony that was irrelevant to the charge against him.

The offense for which defendant was indicted concerned activities which allegedly took place on July 16, 1981. Special Agent Haley testified as to the manner in which defendant obtained cocaine for him on July 16. Over defendant's objections, Haley was allowed to testify that on July 23, he had a conversation with defendant and Nix about the previous July 16 meeting. Defendant stated that there were questions being asked in the area about who Haley was and that if "there was any heat to come down" it would be on Nix.

During defendant's direct examination, he denied any involvement in the alleged drug deal of July 16. On cross-examination, the State asked him about alleged conversations with Haley regarding drug deals on July 17 and July 23. Defendant was asked if "in July of 1981 or in fact any time prior thereto you never had any contact with cocaine in the presence of Maurice Nicks [sic] or Agent Haley?" He responded in the negative. The prosecutor further asked defendant about alleged activities at the Get Down Lounge on December 18, 1980, at the Superstar Disco on February 25, 1981, and September 25, 1981, and at Madam Andre's on April 9, 1981, and February 20, 1982. Defendant denied knowledge of the incidents and stated that he never uses cocaine and did not know Ernest Boston. Defendant continually objected to the line of questioning and made motions for mistrial, all of which were denied.

As a rebuttal witness, the State presented Sergeant Eddie Green of the internal affairs division of the Chicago police department. Over defense counsel's repeated objections, Green was allowed to testify that at the Get Down Lounge on December 18, 1980, he observed the bartender hand a brown medicine vial containing white powder to defendant, Officer Terry and a girl named Penny. After receiving the vial, the three exited the lounge and approximately 15 minutes later returned with heavy traces of white powder on each of their noses. Prior to this testimony, the trial court instructed the jury that "[t]his is being accepted for the limited purpose, insofar as credibility of previous testimony is concerned and is not to be considered by the Jury as any proof of the offense for which this Defendant is charged."

The State then attempted to question Green about an incident involving Officer Terry and Penny that occurred on February 6, 1981. After a side bar conference, the court sustained defendant's objection based upon lack of foundation and struck the testimony. Green thereafter related an incident on February 25, 1981, at the Superstar Disco concerning defendant, Penny and another male. Green said that he

saw Penny go into the restroom with about 10 separate females at different intervals. Defense counsel objected, and, during a side bar, the trial court ruled that the testimony regarding the white powder was permissible, but the testimony about Penny's implied transactions on February 25 was too prejudicial, and the "prejudicial impact outweighs the probative value."

The prosecutor then inquired about the admissibility of evidence that on April 9, 1981, defendant invited a male patron into the restroom with him, while at the same time Penny was taking females into the women's washroom. The trial court ruled this inadmissible, saying that the other testimony was allowed for the purpose of showing defendant was familiar with the establishments, but further testimony would only result in prejudice outweighing its probative value. After the jury returned, the prosecutor attempted to present evidence of the April 9 incident; all the court would allow Green to testify was that he saw defendant standing with another gentleman and asking him if he could go into the washroom with him. Defense counsel's objections were sustained to the State's further attempt to offer evidence of an occurrence on May 22.

The State then recalled Officer Haley, who stated that on July 16, shortly after 12:50 a.m., he had a conversation with Terry in the Get Down Lounge concerning his drug usage. Also, in the presence of Terry, defendant, Nix and two other males, Haley requested cocaine on July 17 at that same lounge. Shortly thereafter, Haley repeated his request at Madam Andre's in the presence of Nix and Terry. Later, Haley had a conversation with Terry at Madam Andre's on July 17 regarding Terry's selling cocaine to Haley. At approximately 2:49 a.m. on July 17, Haley had a conversation with defendant and Nix outside of Madam Andre's wherein defendant told Haley that Terry had given Haley two packages too many and Haley replied that he had given them to Nix. Haley told defendant that Terry had given him 10 packets, not eight, and then he handed defendant the packets. On July 23, 1981, shortly after 1:15 a.m., Haley spoke with defendant and Nix and defendant offered to buy a gram of cocaine for Haley at the cost of $100. Defendant informed Haley that the money was to pass to Nix, and that he did not want Haley to witness the sale. Defendant allegedly stated that dope was plentiful, but that "the heat was on." The jury was instructed that this testimony was admitted for the limited purpose of assessment of the credibility of the witnesses and "is not to be used by you or considered by you as to the guilt or innocence on the charge that is before you."

Defendant argues that testimony of events which happened on

dates other than July 16, 1981, were erroneously admitted for the following reasons: (1) the evidence consisted only of inferences of misconduct and were not proof that a crime had been committed; (2) even assuming it was proper evidence of "other crimes," the testimony does not fit into any of the traditional exceptions to the rule of exclusion; (3) the testimony exceeded the scope of the direct examination; (4) the trial court offered an improper rationale for allowing the evidence; (5) the testimony was not probative of the crime for which defendant was indicted; and (6) any probative value of the testimony was outweighed by its prejudicial effect on the jury.

It is undisputed that evidence of crimes other than the ones for which a defendant is on trial cannot be admitted unless it is shown that a crime actually occurred and that defendant committed it (*People v. Miller* (1977), 55 Ill. App. 3d 421, 426, 370 N.E.2d 1155, *appeal denied* (1977), 66 Ill. 2d 634); further, proof of extra-indictment crimes is permissible where it proves knowledge, intent, motive, design, plan or identification (*People v. Alexander* (1982), 93 Ill. 2d 73, 79, 422 N.E.2d 887). In the case at hand, testimony was permitted which showed that six months prior to the day of the offense in the indictment, defendant received a brown vial at the Get Down Lounge and was thereafter seen with white powder on his nose. No evidence was received as to the nature of substance of the powder. At best, this is only an inference that defendant was using a drug and because he was on trial for *delivery* of cocaine, it was not probative of this charge. While it is true that defendant stated on cross-examination that he never used drugs, defendant's personal use of narcotics was not germane to the offense for which he was being tried. As stated in *People v. Hanson* (1977), 44 Ill. App. 3d 977, 984, 359 N.E.2d 188, "[i]n short, there must be some connection between the facts proved and the offense charged." We conclude from our review of the record that the evidence which inferred defendant's use of cocaine on December 18, 1980, in the Get Down Lounge was improperly admitted.

Further, we cannot conclude that this error was harmless. During the prosecutor's closing argument to the jury, he highlighted this evidence and told the jury that "[h]eavy white powder under the defendant's nose doesn't lie." The jury subsequently found defendant guilty of possession, and not guilty of delivery of a controlled substance. It is our opinion that the substantial prejudicial impact of this evidence on the jury outweighed any possible probative value it may have had. (See *People v. Funches* (1978), 59 Ill. App. 3d 71, 73-74, 375 N.E.2d 135.) We have determined that this cause must be reversed and remanded to the circuit court.

■ In view of the fact that there may be a new trial on remand, we will take the opportunity to comment on the admissibility of the evidence of other crimes. Evidence of other offenses is allowable if relevant for "any purpose other than to show the propensity to commit crime." (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.) Relevance is the touchstone of admissibility, and evidence of other crimes will not be allowed unless it is probative of the proposition at hand. *People v. Barbour* (1982), 106 Ill. App. 3d 993, 1000, 436 N.E.2d 667, *appeal denied* (1982), 91 Ill. 2d 572.

■ ■ Agent Haley was allowed to present evidence of conversations with defendant on July 17 and 23 regarding drug transactions. Evidence of subsequent drug-related conversations is permissible as "part of the full circumstances attending the commission of the crime" and when it serves "to give a complete picture of the transaction." (*People v. Borawski* (1978), 61 Ill. App. 3d 774, 779, 378 N.E.2d 255; see also *People v. Cole* (1963), 29 Ill. 2d 501, 503-05, 194 N.E.2d 269.) In this case, the only evidence which the State presented to establish the offense charged against defendant was the testimony of Agent Haley. Nix, the informant, did not testify. The State had the difficult task of establishing that this one transaction occurred which had been part of an ongoing investigation; the credibility of the witnesses was therefore very crucial. We believe that the introduction of the subsequent conversations between Haley and defendant were properly admitted as part of the "complete picture" attending the offenses and to show defendant's guilty knowledge of cocaine sales. See *People v. Robinson* (1982), 104 Ill. App. 3d 20, 26, 432 N.E.2d 340, *appeal denied* (1982), 91 Ill. 2d 578, *cert. denied* (1983), 459 U.S. 1228, 75 L. Ed. 2d 469, 103 S. Ct. 1235.

## II

Defendant alleges two points of error regarding the jury instructions given at his trial. He claims that: (A) he was indicted for the offense of delivery of a controlled substance and therefore the jury was erroneously instructed as to the offense of possession; and (B) the trial court erred in not rendering his nonpattern instruction on the charge of delivery which included both the date of the alleged offense and the name of the deliveree.

## A

■ Defendant's contention that the jury should not have been instructed on the included offense of possession is flatly without

merit. Generally, when the record contains evidence which, if believed by the jury, would reduce the crime to a lesser included offense, the trial court should instruct the jury as to this lesser offense. (*People v. Robinson* (1980), 87 Ill. App. 3d 621, 630, 410 N.E.2d 121, *appeal denied* (1981), 82 Ill. 2d 587.) It has been recognized that possession of a narcotic is a lesser included offense of unlawful delivery of a controlled substance which is a narcotic. (*People v. Dunn* (1977), 49 Ill. App. 3d 1002, 1009-10, 365 N.E.2d 164.) In *People v. Lewis* (1980), 83 Ill. 2d 296, 415 N.E.2d 319, our supreme court held that possession with intent to deliver, as well as possession itself, are included offenses within the charge of delivery of a controlled substance, and an information charging delivery is sufficient to support a conviction for the included offense. (*People v. Lewis* (1980), 83 Ill. 2d 296, 301-02, interpreting section 5(e) of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 705(e)).) Defendant's attempt to distinguish this case because *Lewis* was not acquitted by the jury of the delivery charge is not persuasive, since a "conviction of an included offense operates as an acquittal of the offense charged ***." (*People v. Lewis* (1980), 83 Ill. 2d 296, 300.) Based upon the evidence presented at trial of defendant's conduct on the day in question, we conclude that the instruction as to the included offense of possession was justified.

B

 █ Defendant proffered jury instructions which specified Agent Haley as the deliveree, as well as July 16, 1981, as the date of the alleged sale. These instructions were rejected by the trial court. Illinois Pattern Jury Instructions, Criminal, Nos. 2.01 and 17.11 (2d ed. 1981) were given instead. Defendant urges that because the jury heard testimony regarding the use or delivery of cocaine by defendant on various dates, that the nonspecific instructions were highly prejudicial to him. He surmises that the jury heard evidence from which it would conclude that he possessed a controlled substance on six different dates. The State counters that there was no confusion about the dates and that the jury was admonished throughout the trial that defendant was being tried for events occurring only on July 16, 1981.

Supreme Court Rule 451(a) provides that "*** [w]henever IPI-Criminal does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument." (87 Ill. 2d R. 451(a).) Approved pattern instructions are to be used generally, and may be modified or supplemented only when the facts of the particular case make them inadequate. (*People v.*

*Hunter* (1984), 124 Ill. App. 3d 516, 543, 464 N.E.2d 659.) The decision whether to give a tendered nonpattern instruction is always within the discretion of the trial court. *People v. Dixon* (1982), 105 Ill. App. 3d 340, 348, 434 N.E.2d 369, *cert. denied* (1984), 466 U.S. ___, 80 L. Ed. 2d 836, 104 S. Ct. 2364.

■■■ In view of the particular facts in this narcotics case where evidence was erroneously admitted which implied defendant's use of a drug on a date other than the date of the offense in the indictment, we find merit to defendant's argument that the instructions informing the jury of the charges should have included the date of July 16, 1981. We conclude that because of the cumulative effect of the improper evidence combined with this error, defendant's conviction must be reversed.

### III

Defendant also urges that the trial court erred in refusing to allow him the opportunity to present his theory of the case, *i.e.*, that the informant, Nix, had manufactured the State's case against him in order to gain leniency on his pending felony charges. Although this issue may not be involved in a possible retrial of defendant depending on whether or not Nix will then be a witness, we nevertheless choose to resolve it.

At trial it was alleged that Nix had charges pending against him when Haley first met him on July 15, 1981. Despite numerous attempts, defendant was not allowed by the trial court to establish that these charges were nol-prossed by the State on August 18, 1981, as a consequence of Nix's cooperation. Defendant also tried to present the fact that he had telephone conversations with Nix during which Nix allegedly offered his services as an informant in order to get out of pending charges. Furthermore, Nix allegedly confessed to defendant that he set him up and that he wished to tell the truth to defendant's lawyer. Defendant suggests that the State used Nix and now is hiding behind the fact that he cannot be located.

■■■ The State acknowledges that a defendant is entitled to all reasonable opportunities in which to present evidence which might create doubt as to his guilt. (*People v. Reese* (1984), 121 Ill. App. 3d 977, 988, 460 N.E.2d 446.) A trial court may, however, exclude evidence when its relevancy is so speculative as to impart little probative value. (*People v. Hunt* (1981), 99 Ill. App. 3d 958, 965, 426 N.E.2d 568.) In this case, the trial court ruled that evidence that Nix's two felony charges had been nol-prossed by the State was too speculative, and further, that unless Nix was called to testify, this would be in es-

sence "back door impeachment."

The sole witness who established the elements of the offense during defendant's trial was Agent Haley. The excluded testimony would do nothing to establish any motive or bias on Haley's part. Even if defendant's charge that Nix had "fabricated this evidence and somehow or other, ensnared—I'm not going to use the word entrapped, ensnared the Defendant into his net" was true, this motive on the part of Nix would not bear upon Haley's credibility.

We take this opportunity to make an observation regarding this situation should it arise again in a possible new trial. Here, the State was allowed, without objection by defense counsel, to inform the jury that Nix had felony charges pending against him at the time of the alleged offense. Defendant's subsequent attempts to advise the jury of the ultimate disposition of those charges as part of his theory of defense were thwarted by the trial court. We have been unable to locate in the record any motion by defense counsel to strike the previous references to Nix's pending charges. If defense counsel had made such a motion, and the trial court denied it, our conclusion on this issue may have been different.

■■■ We believe that any reference to the absent witness' criminal history was irrelevant and thus improper. Evidence of Nix's pending felony charges, left unrefuted, could have been prejudicial to defendant, since testimony at trial showed defendant's association with Nix. However, because defense counsel did not move to strike this evidence, nor did he raise this issue in his post-trial motion or before this court, we only offer our comment for possible future guidance.

## IV

■■■ Defendant further alleges that the trial court erred in allowing his defense witness, Officer Terry, to be asked improper prejudicial questions on cross-examination. This issue may also be raised on retrial and thus we will address it. Terry was asked by the prosecutor if he had been suspended from the police force for an alleged delivery of cocaine on July 17, 1981. Terry admitted that he was suspended on approximately the second or third day of September in 1981. Defendant notes that at the time of his trial, Terry had not yet been tried for the offense for which he was suspended and he improperly informs this court in his brief that Terry was acquitted of the charge.

The State argues that the trial court correctly allowed evidence of Terry's suspension and pending charge in order to show Terry's bias or motive for testifying for defendant. The State established that Terry was suspended from the police force because he had been

charged with an alleged delivery of cocaine to Agent Haley. Terry testified on direct that he did not know anyone named William Haley, or Billy Davis, Haley's undercover name. Therefore, evidence that Terry knew Haley was the deliveree named in the pending charge against him would be relevant to establish his motive or bias and was proper. *Cf. People v. Mason* (1963), 28 Ill. 2d 396, 403, 192 N.E.2d 835.

We have determined that the evidence presented by the State is sufficient to support the jury's verdict of guilty of the offense of possession. However, because of our finding that defendant was prejudiced by errors committed at his trial, we reverse this cause and remand it for a new trial. See *People v. Barbour* (1982), 106 Ill. App. 3d 993, 1002-03, 436 N.E.2d 667, *appeal denied* (1982), 91 Ill. 2d 572.

The judgment of the circuit court of Cook County is hereby reversed and the cause is remanded.

Reversed and remanded.

HARTMAN, P.J., and STAMOS, J., concur.