THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL RODARTE, Defendant-Appellant.

First District (1st Division) No. 1—86—3167

Opinion filed June 26, 1989.—Modified on denial of rehearing December 4, 1989.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and James Sanford, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Defendant stands convicted of four counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14) and one count of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4). He appeals, claiming that: (1) he was denied a fair trial when the judge referred to the complaining witness as "dear" in the presence of the jury; (2) the State failed to prove the defendant's guilt beyond a reasonable doubt; (3) the trial court should have instructed the jury on the lesser included offense of criminal sexual assault; (4) the Illinois criminal sexual assault statute is overbroad and void for vagueness; (5) the trial court erred by sentencing the defendant for four counts of aggravated criminal sexual assault and one count of aggravated battery where defendant committed only one offense; and (6) the trial judge abused his discretion by sentencing the defendant to concurrent 10-year sentences.

The defendant, Michael Rodarte, and the complaining witness were co-workers at a bar and restaurant known as Findley's Pub. The defendant was a doorman and the complainant was a waitress. On October 16, 1985, both parties were scheduled to work; however, the defendant was given the night off due to slow business. He remained on the premises to celebrate another co-worker's birthday.

The defendant drank heavily and became intoxicated at the celebration; the complainant had one drink. He offered the complainant a ride home, but she drove the defendant's car because he was too drunk to drive. While driving to her apartment, the complainant was stopped by a Chicago police officer. The defendant then drove the remaining distance to the complainant's apartment.

On the evening in question the defendant was wearing a pair of loosely fitting, blue khaki pants, a white Findley's jacket, which had a small blue logo on the front and a large logo on the back, and the complainant was wearing jeans, a sweater, a sleeveless T-shirt and an oxford shirt.

The complainant testified that since the defendant felt too ill to drive she offered to let him sleep on the couch in the apartment she shared with three female roommates. There were no lights in the apartment when they entered, and her roommate Jamie was asleep on the floor. The complainant walked to the bedroom which she shared with Linda, said hello to Linda, who was asleep, and returned to the living room. She showed the defendant the bathroom and instructed him to rest on the couch.

As she walked back to her bedroom, the defendant followed her. He asked whether he could sleep in another room which was off the

hallway. She told the defendant that that was her roommate Cathy's room and that she did not know whether Cathy was at home. When she stepped into Cathy's room and turned on the light, the defendant forced her inside and shut the door. He ripped her oxford and T-shirt open, removed her sweater and pushed her face down into the bed. She tried to make noise, but the defendant covered her mouth and hit her repeatedly in the face. During this beating, she lost consciousness for several seconds. The defendant then gagged her mouth and tied her hands behind her back and removed her shoes, pants and panties. He pulled his pants down to his knees, placed his mouth over her breasts and forced his fingers into her vagina and anus. The defendant inserted his tongue into her vagina and his penis touched her vagina and anus, but there was no penetration.

After performing these acts, the defendant put her pants back on and buttoned a sweater around her shoulders. He dressed and forced the complainant to leave the apartment barefoot while still bound and gagged. He walked her out of the apartment building and pushed her into a garbage dumpster.

The complainant was in the dumpster for approximately five minutes when Steven Avery, a neighbor, arrived and rescued her. He took the gag from her mouth and cut her hands loose. He then took her to his apartment, where they waited for the police to arrive. As a result of the beating, the victim had blurred vision in one eye for two months.

Steven Avery testified that he lived in the same apartment building as the complainant and that on October 17, 1985, he returned home from work at approximately 2:30 a.m. While unloading his car he saw a 5-foot 8-inch heavyset male wearing tight jeans, a T-shirt and a light-colored jacket which did not have any writing on it, standing in a hallway. He identified the defendant as that man. Mr. Avery walked to his apartment and then returned to his car. He saw the man a second time in the hallway about 10 feet from the rear door of the apartment building. He went back to his apartment and returned with a knife and his dog, but the man was gone. He walked to the rear doors, where he heard a woman's muffled voice calling out what sounded like the name "Mike." As he opened the rear door he saw two feet sticking out of a garbage dumpster. He opened the dumpster and found the complainant bound, gagged and beaten. He called the police and then rescued the complainant from the dumpster and cut her hands loose. They went to her apartment and waited for the police to arrive.

Chicago police officer Chris Sorozco testified that on the morning

of October 17, 1985, he received radio information about a rape. He went to the given address where he was met by Steven Avery. Mr. Avery took Officer Sorozco to his apartment, where he talked with the victim. The complainant appeared to be in a state of shock and told him that she was raped by a co-worker named Mike. Officer Sorozco took her to the dumpster and then back to her apartment. The door was opened by her roommate Linda, and her other roommate was asleep on the living room floor. He gathered evidence and took the complainant to the hospital.

Daniel Steinhauer, general manager of Findley's Pub, testified that he was at the pub on October 16, 1985. The uniform jacket that the defendant wore that evening was a white baseball-style jacket, with a six- to seven-inch blue "Findley's" logo on the front and a 12-inch multicolored logo on the back. He testified that the defendant was scheduled to work Friday and Saturday following the incident but did not show up for work.

Lastly, the State offered the testimony of Chicago police detectives Carey Orr and John Cole. Detective Orr testified that on October 17, 1985, he called the owner of Findley's Pub and obtained information on the defendant. He went to the defendant's apartment, and not finding him at home, left a business card with the defendant's mother and requested that the defendant contact him. Detective Cole testified that on October 23, 1985, the defendant appeared at the police station with his attorney and was arrested.

The defendant testified on his own behalf and stated that he was employed full time at Alamo Rent-a-Car and worked part time at Findley's Pub. On the night in question he was wearing loosely fitting blue pants, a long-sleeved white shirt with a collar and his Findley's jacket. His testimony was substantially the same as that of the victim up to the point when they reached her apartment. He stated that when he entered her apartment there were no lights on, and he almost tripped over a male figure sleeping on the living room floor whom the complainant identified as a friend of her roommate's boyfriend. He followed the complainant down the hallway to the back bedroom, where the complainant said hello to her roommate, Linda. The defendant heard a male voice come from the bedroom.

He went back to the living room, where he fell asleep for a brief time. When he awoke, he left the apartment, went to a White Hen Pantry where he drank a cup of coffee and went to work at Alamo. He stated that he never sexually assaulted the complainant. It was established at trial that the defendant had resigned from his job at Alamo one month prior to the incident.

Defendant was indicted on multiple counts of aggravated battery, aggravated kidnapping, kidnapping, unlawful restraint, intimidation, aggravated criminal sexual assault, criminal sexual assault and attempted criminal sexual assault. Following a jury trial, he was convicted of one count of aggravated battery and four counts of aggravated sexual assault and sentenced to five concurrent 10-year terms.

One of defendant's contentions is that the statute under which he was convicted for aggravated criminal sexual assault is unconstitutionally broad and vague because it fails to meaningfully define the element of force. The same argument was presented to and rejected by our supreme court in *People v. Haywood* (1987), 118 Ill. 2d 263, 515 N.E.2d 45. Accordingly, we find no merit in the defendant's argument.

Defendant's next argument is that he was denied a fair trial when the court referred to the complaining witness as "dear," thereby enhancing her credibility and prejudicing him before the jury. It is generally accepted that the defendant's failure to object to an issue during trial or to raise it in a written post-trial motion specifying the grounds supporting the motion constitutes waiver of that issue and the alleged error will not be considered as being properly before the reviewing court absent plain error. (*People v. Shum* (1987), 117 Ill. 2d 317, 340, 512 N.E.2d 1183; *People v. Szabo* (1986), 113 Ill. 2d 83, 93, 497 N.E.2d 995, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 181, 107 S. Ct. 1330; *People v. Johnston* (1987), 160 Ill. App. 3d 536, 542, 513 N.E.2d 528.) Moreover, our supreme court in *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 112, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274, invoked a more narrow construction of the general rule by holding that to preserve an issue for review, "*both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during the trial." (Emphasis in original.) As this issue was neither objected to at trial nor raised in the post-trial motion, and we do not recognize it as plain error, it has been waived on appeal.

Defendant also claims that he was not proven guilty of aggravated battery and aggravated criminal sexual assault beyond a reasonable doubt because the victim's testimony was unreliable and the witness' description of the clothing worn by the assailant did not match what the defendant was wearing that night. He contends that some unknown male who had been sleeping on the living room floor may have committed the offense.

The identification testimony of a single witness, if positive

and credible, is sufficient for a conviction. (*People v. Thomas* (1986), 145 Ill. App. 3d 1, 7-8, 495 N.E.2d 639.) A conviction for aggravated criminal sexual assault, where the defendant denies the charge, will be upheld where there is either some corroboration of the testimony of the complaining witness, or that testimony is otherwise clear and convincing. (*People v. Sexton* (1987), 162 Ill. App. 3d 607, 612, 515 N.E.2d 1359.) The credibility of the complaining witness is a question for the trier of fact, and a reviewing court will not reverse the conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt exists. *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019.

 In the present case, the victim consistently identified the defendant as her assailant. It was the jury's function to determine the weight to afford her testimony, and we are not inclined to reverse that finding on appeal. The evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt.

Defendant also maintains that the trial court should have instructed the jury on the elements of the lesser included offense of criminal sexual assault. He contends that because the victim did not suffer any broken or fractured bones, was not permanently disfigured or hospitalized overnight for her injuries, the jury could have found that she did not suffer bodily harm.

 Section 12—14 of the Criminal Code of 1961 provides, in part, that an accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and causes bodily harm to the victim. (Ill. Rev. Stat. 1985, ch. 38, par. 12—14.) "Bodily harm" is defined in the Code as "physical harm, and includes, but is not limited to, sexually transmitted disease, pregnancy and impotence" (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(b)), and is given the same meaning as bodily harm under the battery statute. (*Haywood*, 118 Ill. 2d at 277.) For purposes of the battery statute, bodily harm consists of some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent. *People v. Mays* (1982), 91 Ill. 2d 251, 256, 437 N.E.2d 633; *People v. Boyer* (1985), 138 Ill. App. 3d 16, 18, 485 N.E.2d 460.

 █ In the present case there is no evidence which would allow a jury to find the defendant guilty of the offense of criminal sexual assault. The record indicates that the victim was hit in the face between 5 and 10 times during the attack. Her face was bruised and swollen, and she had blurred vision for about two months after the incident. An included-offense instruction is only required in cases where the jury could rationally find the defendant guilty of the lesser offense

and not guilty of the greater offense. (*People v. Perez* (1985), 108 Ill. 2d 70, 81, 483 N.E.2d 250.) Where the evidence shows that the defendant is guilty of the higher offense or not guilty of any offense, an instruction on the lower offense is unnecessary and is properly refused. *People v. Reynolds* (1987), 152 Ill. App. 3d 216, 219, 504 N.E.2d 163.

The defendant next argues that his conviction for aggravated battery and his multiple convictions for aggravated criminal sexual assault should be vacated. The most difficult issue presented on appeal is the defendant's contention that his multiple convictions for aggravated criminal sexual assault should be vacated because they stem from the same physical act and constitute only one offense. Defendant relies on the case of *People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1, for this position. In *Cox*, the defendant was convicted of two counts of indecent liberties with a child for committing almost simultaneous acts of sexual intercourse and oral genital contact with the same child. The supreme court vacated one of the convictions, stating that, in the absence of a statutory provision to the contrary, the conduct constituted a single offense and that only one sentence should be imposed. 53 Ill. 2d at 106.

Defendant argues that his actions in the present case similarly constitute one act because they were committed within minutes of each other and involved one victim. The State maintains that the defendant committed four separate "acts" of penetration, and consequently, can be convicted and sentenced for four separate counts of aggravated criminal sexual assault.

The seminal case involving this issue is *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. In *King*, the court stated:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent

sentences can be entered." 66 Ill. 2d at 566.

■■ The determination of this issue involves two inquiries: (1) whether the defendant's conduct constitutes parts of one "act" or distinct and separate "acts" in and of themselves; and (2) if they are distinct and separate acts, whether the defendant's convictions are for different offenses. Factors to be considered in determining whether a defendant's conduct constitutes separate acts or merely distinct parts of a single act are: (1) the time interval occurring between successive parts of the defendant's conduct; (2) the existence of an intervening event; (3) the identity of the victim; (4) the similarity of the acts performed; (5) whether the conduct occurred at the same location; and (6) prosecutorial intent. *People v. Williams* (1987), 161 Ill. App. 3d 613, 622, 515 N.E.2d 266; *People v. Baity* (1984), 125 Ill. App. 3d 50, 52, 465 N.E.2d 622.

An examination of the relevant cases evidences a significant difference of opinion on this issue among the districts of the Illinois Appellate Court. Some cases, relying on *People v. King*, have held that *People v. Cox* is no longer controlling. (See *People v. Leiker* (1983), 115 Ill. App. 3d 752, 450 N.E.2d 37; *People v. Zeiger* (1981), 100 Ill. App. 3d 515, 426 N.E.2d 1229.) Other cases, however, have held that *Cox* and *King* can coexist because they apply to different sets of facts. See *People v. Sanford* (1983), 119 Ill. App. 3d 160, 456 N.E.2d 333.

In *People v. King*, the defendant had been convicted of rape and burglary with intent to commit rape. The court held that since the offenses of rape and burglary are based on separate acts, each requiring proof of a different element, the convictions of both were proper. (*King*, 66 Ill. 2d at 566.) Meanwhile, in *People v. Cox*, the defendant was convicted of two counts of indecent liberties with a child, pursuant to different subsections of the same statute. The court stated that where the defendant's convictions were based on a single transaction involving two acts, each of which was an act proscribed by the same statute, and there was no indication in the statute whether multiple violations would constitute a single or multiple offenses, any ambiguity should be resolved in favor of leniency. (*Cox*, 53 Ill. 2d 101.) Thus, the distinction turns on whether the situation is one which involves multiple convictions for different offenses based on a series of closely related acts, or multiple convictions for the same offense based on those acts.

Subsequent supreme court cases have maintained this distinction. For example, in *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180, the defendant appealed his convictions for aggravated battery and mob action based on a repeated beating administered by the

defendant, arguing that the beating constituted a single "act" and could support only one conviction. Relying on *People v. King*, the court held that the interrelationship of multiple acts did not preclude multiple convictions and that the separate blows, although closely related, were separate acts which could properly support multiple convictions for different offenses. *Dixon*, 91 Ill. 2d at 356.

In the present case, the statute upon which the petitioner's aggravated criminal sexual assault convictions are based provides:

> "§12—14. Aggravated criminal sexual assault. (a) The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during the commission of the offense:
>
> \* \* \*
>
> (2) the accused caused bodily harm to the victim; or
>
> (3) the accused acted in such a manner as to threaten or endanger the life of the victim or any other person; or
>
> (4) the criminal sexual assault was perpetrated during the course of the commission or attempted commission of any other felony by the accused." (Ill. Rev. Stat. 1987, ch. 38, par. 12—14.)

Pursuant to this section, the offense of aggravated criminal sexual assault may be committed in any of the enumerated ways. As in *People v. Cox*, the statute contains no indication of whether violations of multiple subsections constitute a single or multiple offenses.

We acknowledge the cases which hold that the defendant's conduct may constitute a single offense and that only one sentence should be imposed. (See *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200; *Cox*, 53 Ill. 2d 101, 291 N.E.2d 1; *People v. Burmeister* (1986), 147 Ill. App. 3d 218, 497 N.E.2d 1212; *People v. Rassmussen* (1986), 143 Ill. App. 3d 11, 492 N.E.2d 12; *Sanford*, 119 Ill. App. 3d 160, 456 N.E.2d 333.) However, recent cases have also held that there can be as many separate convictions with concurrent sentences as there are acts, even though they constitute violations of subsections of the same statute, so long as they are not lesser included offenses. See *People v. Partee* (1987), 157 Ill. App. 3d 231, 511 N.E.2d 1165; *People v. Mueller* (1985), 130 Ill. App. 3d 385, 474 N.E.2d 434; *Leiker*, 115 Ill. App. 3d at 752, 450 N.E.2d 37; *People v. Post* (1982), 109 Ill. App. 3d 482, 440 N.E.2d 631; *Zeiger*, 100 Ill. App. 3d 515, 426 N.E.2d 1229; *Mays*, 81 Ill. App. 3d 1090, 401 N.E.2d 1159.

Our supreme court has recently resolved the ambiguities and conflicting results represented by the various decisions by con-

cluding that a defendant who commits multiple acts of equal value, *i.e.*, Class X felonies may be prosecuted and convicted for each act. (*People v. Segara* (1988), 126 Ill. 2d 70, 77, 533 N.E.2d 802.) In reaching its conclusion, the *People v. Segara* court noted that although it was not the legislature's intent for a defendant to receive convictions for each act, the General Assembly ensured that each act of rape regardless of how it was committed is punishable, since rape is unlike other offenses in that with each act the victim's psychological constitution and most intimate part of her being have been violently invaded. (126 Ill. 2d at 77-78.) Accordingly, we affirm the trial court's four separate convictions, rather than a single term for all convictions. *King*, 66 Ill. 2d at 556, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273; *Segara*, 126 Ill. 2d at 78.

As to the defendant's conviction for aggravated battery, the record indicates that the defendant was charged with aggravated battery for striking the victim in the eye at the time of the sexual assault and for later throwing her in a dumpster. Either of these actions would support a conviction for aggravated battery, and since the jury returned a general verdict, there is no way of knowing which theory the verdict is based upon. Where the jury renders a general verdict, it is presumed to be based on any good charge to which the proof is applicable (*People v. Tanner* (1986), 142 Ill. App. 3d 165, 170, 491 N.E.2d 776), and consequently, the verdict is valid.

Finally, defendant claims that he should be resentenced because: (1) he was found guilty of four counts of aggravated criminal sexual assault when he committed only one offense; (2) the court abused its discretion in sentencing him to five concurrent 10-year sentences; and (3) the sentence of 10 years' imprisonment imposed for aggravated battery exceeds the statutory maximum.

Defendant was convicted of four counts of a Class X felony (aggravated criminal sexual assault) and one Class 3 felony (aggravated battery). A Class X felony is punishable by not less than 6 years' and not more than 30 years' imprisonment. A Class 3 felony is punishable by not less than two years' and not more than five years' imprisonment. The State concedes that the court imposed an excessive 10-year conviction for the aggravated battery conviction and that the matter should be remanded for resentencing on that count. However, defendant's sentence for each of the Class X felonies is within the range provided by the statute.

While the determination and imposition of a sentence involves considerable judicial discretion (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344; *People v. Barfield* (1989), 187 Ill.

App. 3d 190, 201-02), where the sentence that is imposed is within the statutory limits, a reviewing court will not reduce the sentence unless the trial court has abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882; *People v. Hattery* (1989), 183 Ill. App. 3d 785, 828, 539 N.E.2d 368.) We find no abuse of discretion in the sentencing on the four counts of aggravated criminal sexual assault. However, the State concedes that the sentence imposed for the defendant's aggravated battery conviction exceeds the statutory limits. In defendant's petition for rehearing, raising only objections to remandment for resentencing and the people's response thereto, the parties are in agreement that a sentence of five years be imposed on that charge.

Accordingly, we affirm the defendant's convictions and sentences on the four counts of aggravated criminal sexual assault. However, pursuant to Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)), and in light of the parties' stipulation, the sentence imposed on the defendant for the offense of aggravated battery is reduced to a term of five years' imprisonment.

Judgment affirmed as modified.

CAMPBELL and QUINLAN, JJ., concur.